THE CITY OF KANSAS v. MORSE *et al., Appellants.*

### DIVISION ONE.

1. **Kansas City Charter:** CONDEMNATION FOR STREETS : CONTRACTS OF RELINQUISHMENT. Under section 4, article 7, of the Kansas City charter, providing for relinquishment of property by the owners for public use without claims for damages, on condition of exemption from payment of benefits, it is immaterial that the contract of relinquishment is signed by the mayor after the passage of the ordinance authorizing him to accept it.

2. ——— : ——— : ———. The communication of the mayor to the council in which he stated he therewith submitted for its consideration "the proceedings and verdict," had under the ordinance directing the opening of the street, and giving the date of its approval, was a sufficient compliance with the charter requiring the mayor's report of his proceeding to the council.

3. ——— : ——— : ———. The ordinance of confirmation in this case *held* to have sufficiently included the acts of the mayor in accepting the contracts of relinquishment.

4. ——— : ——— : APPEAL : DIMINUTION OF RECORD. When, on an appeal in such condemnation case from the mayor to the circuit court, a diminution of the transcript is shown, the circuit court should direct a full and complete transcript to be sent up.

5. ——— : ——— : ——— : JURISDICTION. Where the appellants in such proceeding were brought before the mayor's court by due process of law, and there was no dismissal as to them, they cannot object to the jurisdiction of the circuit court on the ground of a settlement having been made by them with the city.

6. ——— : ——— : DAMAGES FOR HOUSES TAKEN. Under the charter of Kansas City, providing that the owner shall have actual damages for taking his property for street purposes, houses on the land being part of the realty must be paid for as such.

7. ——— : ——— : ———. Said houses become the property of the city, so far as taken by it, and the cost of their removal to other land of the owner is irrelevant.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman* for appellants.

(1) There was error in overruling the objections to the jurisdiction, because a contract of relinquishment had been made with these appellants under section 4 of the charter. And in support of the proposition the following authorities are cited : Laws, 1875, art. 7, secs. 1–5, pp. 196, 244–245 ; *State v. Snyder*, 98 Mo. 555 ; *Paving Co. v. Hunt*, 100 Mo. 22 ; *State ex rel. v. Mead*, 71 Mo. 266, 271 ; Cooley's Const. Lim. [ 3 Ed.] secs. 74, 78 ; Lewis on Eminent Domain, sec. 605. ( 2 ) For the same reasons, and upon the same citations and arguments, we submit that there was error in overruling the suggestion of diminution of record, and in excluding the offer by these appellants of the contracts of relinquishment. ( 3 ) The measure of damages concerning buildings, all or portions of which were within the lines of the proposed street, was not correctly stated to the jury. *Bridge Co. v. Schaubacher*, 57 Mo. 582 ; 1 Sutherland on Damages, 148–154 ; 3 Sutherland on Damages, 445, 447 ; *Hyde v. Middlesex*, 2 Gray, 267 ; *Brown v. Worcester*, 13 Gray, 31. ( 4 ) The court erroneously permitted the jury to call to its assistance the city engineer. Under the charter, section 3, the mayor might so require, but the permission has no application upon a trial in the circuit court.

*F. L. Wilkinson* for appellant Vineyard.

(1) This is a summary *in invitum* proceeding in derogation of the common law, and, in such proceedings to divest the owner of his property, the law authorizing it should be strictly construed, and the facts showing jurisdiction must affirmatively appear— *strictissimi juris.* Charter Kansas City, art. 7, sec. 5 ; *Anderson v. Pemberton,* 89 Mo. 65 ; *St. Louis v.*

*Gleason*, 93 Mo. 33; *Whitely v. Platte Co.*, 73 Mo. 30; *Schaffner v. St. Louis*, 31 Mo. 264; 1 Rorer on Railroads [1 Ed.] chap. 10, sec. 3, p. 291; Cooley's Constitutional Limitations [3 Ed.] p. 395; Dillon's Municipal Corporations [3 Ed.] secs. 604-5. (2) In condemnation proceedings, compensatory damages alone are allowed, and the recovery, therefore, must be confined to the actual damages sustained. *Bridge Co. v. Schaubacher*, 57 Mo. 582; 49 Mo. 555; 1 Sutherland on Damages [1 Ed.] sec. 1, p. 17; Mills on Em. Dom. [1 Ed.] sec. 167, p. 167. (3) Damage is the loss, hurt or injury sustained in person or property, and in all actions affecting property merely, and sounding alone in damages, as in eminent domain proceedings, the just compensation provided for in article 2, section 21, the state constitution, is the full recompense or remuneration for the loss, hurt or injury occasioned by the taking or damaging of private property for public use. *Walther v. Warner*, 25 Mo. 277; *Commonwealth v. Coomby*, 2 Mass. 492; *Railroad v. Winslow*, 66 Ill. 219; *Sater v. Railroad*, 1 Iowa, 393. (4) The only theory upon which the assessment of so-called benefits can be upheld as not being repugnant to the constitution is the one that the property is thereby enhanced by the improvement in a sum equal to the assessment imposed. *Garrett v. St. Louis*, 25 Mo. 505; *Tyler v. St. Louis*, 56 Mo. 60; *Sheehan v. Hospital*, 50 Mo. 156. (5) Although the jury is the sole judge of the weight of evidence and the credibility of the witnesses, such latitude is not unbridled authority for arbitrary oppression or the confiscation of property, but is circumscribed and restrained by reason and justice. *Nicholson v. Couch*, 72 Mo. 209; *Watson v. Harmon*, 85 Mo. 446; *Garrett v. Greenwell*, 92 Mo. 125.

*R. L. Yeager, W. S. Cowherd* and *F. H. Dexter* for respondent.

(1) The trial court properly overruled the objection to the jurisdiction, for the reason that the record

of the proceedings contained in the transcript of appeal did not show any such contracts of relinquishment and proceedings thereunder as to relieve appellants from the liability to assessment by reason of the opening of Main street, under these proceedings, by virtue of Laws of Missouri, 1875, sections 4 and 5, pages 244–246.   The appealing from the verdict in the mayor's court waived all questions as to jurisdiction of the person.  *Com. v. Town*, 19 Ill. App. 259; *Names v. Com'rs*, 30 Mich. 490; *Bixby v. Goss*, 54 Mich. 551.   (2)   The alleged contracts of relinquishment were not proper or competent to be considered in the case.   The contracts of relinquishment antedated the authority to relinquish.   Condemnation proceedings are strictly construed; their limit is the letter of the law governing them.   *Cunningham v. Railroad*, 61 Mo. 33; *City v. Gleason*, 89 Mo. 67.   (3) Where the charter of a municipal corporation authorizes a contract to be made by the corporate body in a certain mode, the officers and agents cannot bind it in any other manner.   *Keeney v. Jersey City*, 11 Am. & Eng. Corp. Cases, 309; *Coney v. Freeholders, etc.*, 2 Am. & Eng. Corp. Cases, 48.   (4)   The court properly ruled on the measure of damages to Hinchman and Lampe, as allowed by the instructions upon the evidence, and in the admission and exclusion of evidence thereon.

BLACK, J.—This proceeding was commenced before the mayor of the City of Kansas to condemn property for street purposes.   The important facts are these :

An ordinance approved on the seventh of October, 1887, provided for opening Main street from Twentieth street to the Grand boulevard.   It established the width of the street and fixed the boundaries of the benefit district.   Pursuant thereto the mayor made an order for a jury to assess damages and benefits, and the proceedings were continued from time to time.   While the proceedings to condemn were pending, the mayor, as party of the second part, made two contracts in the name of

the city bearing date May 23, 1888, one with the Kansas City Belt Railway Company, and the other with Adams, Thayer and Morse, whereby the parties of the second part relinquished the land owned by them, sought to be condemned, on condition of exemption from payment of benefits and on certain other conditions. Afterwards and on the twenty-eighth day of May, 1888, the common council passed an ordinance which is in these words: "That the mayor be, and he is hereby, authorized to accept from the Kansas City Belt Railway Company and Charles F. Adams, Nathaniel Thayer and C. F. Morse the relinquishment of the land necessary for the opening of Main street as provided by ordinance  *  *  * approved October 7, 1888, and to accept and bind the City of Kansas to keep and comply with the terms and agreements contained in said relinquishment."

Thereafter the mayor impaneled a jury, and on the fourteenth of June, 1888, the jury returned a verdict. This verdict describes the parcels of land owned by the Belt Railway Company, Adams, Thayer and Morse, and allows them $1 as damages for each parcel taken, and assesses them with $1 for benefits on each parcel not taken. The verdict also assesses full damages in favor of, and benefits against, various other parcels of land owned by other persons. On the same day the mayor addressed a communication to the council saying: "I herewith submit for your consideration the proceedings and verdict taken and had by the City of Kansas under ordinance  *  *  * approved October 7, 1887." On the twenty-seventh of June, 1888, the common council passed an ordinance confirming "the verdict and proceedings" so reported to them. Thereafter four property-owners, not before named, took the proceedings to the circuit court by appeal.

The transcript filed in the circuit court did not contain the contracts of relinquishment before mentioned, nor did it contain the ordinance of May 28, authorizing

the mayor to accept the same. The Belt Railway Company, Adams, Thayer and Morse made proof of the existence of these contracts and the ordinance, but the circuit court declined to order them up as part of the record, when requested so to do, and refused to permit them to be introduced in evidence, and proceeded to assess damages and benefits, disregarding the contracts and ordinances. From these rulings the railway company, Adams, Thayer and Morse appealed.

1. It is sought to justify these rulings on the ground, among others, that the mayor and the contracting parties did not pursue the method pointed out by the charter.

According to section 4 of article 7 of the city charter, when one or more owners of property to be taken shall propose to relinquish such property without claims for damages, on condition of exemptions from payment of benefits, the mayor may be authorized to compromise and agree with such persons as equity may seem to require, "and proceed to condemn such other property as may not be relinquished, * * * and report his proceedings to the common council, anything contained in this act to the contrary notwithstanding."

Section 5 provides : " The mayor shall, after the rendition of the verdict, report the same, together with the proceedings under the last section to the common council ; and, if the same be not confirmed within sixty days from the making of such report, the proceedings and verdict shall be void," etc. Appeals are to be taken within twenty days from the time the verdict is confirmed by the council.

As the relinquishments bear date the twenty-third of May, 1888, it is insisted the mayor had no authority to bind the city when he signed them. From the ordinance passed on the twenty-eighth of May, 1888, it is very clear that these contracts had then been prepared, and were before the council ; for the ordinance authorized the mayor to accept them and bind the city " to

keep and comply with the terms and agreements contained in said relinquishment." From the language just quoted it would seem the mayor had not yet signed the prepared contracts, and that he signed them after the passage of that ordinance and in accordance with the terms thereof. This being so, the objection is without any force. But we do not regard it as a matter of any consequence whether he signed the agreements before or after the ordinance was passed; for, if they were signed before, the ordinance ratified the act of the mayor in signing them. As the council had the power under the charter to authorize the mayor to accept relinquishments, that body could ratify such contracts made by him before authority given. 1 Dill. Mun. Corp. [ 4 Ed. ] sec. 463.

2. The next objection to the relinquishments is that the mayor did not report them to the council, and that the council did not confirm his act in taking them. The charter provides that the mayor, being authorized by the council so to do, may accept proposals of property-owners to relinquish property for street purposes without claim of damages, on condition of exemption from payment of benefits. The agreements made by him are to be reported to the council with the verdict, and if not confirmed then the whole proceedings are void. Now the mayor in his report did not make special mention of these contracts; but he did say, "I herewith submit for your consideration the *proceedings and verdict* taken and had, " etc. The ordinance of June 27, 1888, confirmed the "verdict and proceeding" so reported. This language used by the mayor in his report is broad enough to include these relinquishments. It was not necessary that he should have made a more particular mention of them. It was sufficient that he reported them with the verdict.

We think the mayor's report and the ordinance of confirmation comprehend and include his action in accepting these contracts. This conclusion is not overthrown, but rather confirmed, by an examination of

the verdict reported by the mayor. Though this ver-
dict shows that three or four parcels of land owned by
Adams, Thayer, Morse and the Belt Railway Company
were condemned, still the damages were assessed at
$1 for each parcel, and the benefits to the other lands of
these parties were assessed at a like amount. The jury
in the circuit court, where these contracts were disre-
garded, assessed the value of the same property taken
at something over $31,000. The nominal amount of dam-
ages allowed and benefits assessed in the mayor's court
shows clearly enough that the agreements were consid-
ered, both by the jury in the mayor's court, and by the
council when confirming that verdict.

But, aside from all this, it is clear that these very
contracts of relinquishment were before the council on
the twenty-eighth of May, and were approved by that
body at that time. This approval was made, it is true,
before the verdict of the jury had been returned to the
mayor, and before he reported it to the council, but the
time at which the council approved the contracts is not
material. That approval of the contracts by the coun-
cil, though made before the verdict was reported to the
mayor, or by him to the council, was of itself sufficient
to give full force and effect to the contracts, provided
the verdict thereafter rendered was approved within the
sixty days. These agreements between the city on the
one hand, and the railway company, Adams, Thayer
and Morse on the other, and the ordinances of twenty-
eighth of May, 1888, constituted a part and parcel of
the condemnation proceedings, and should have been
certified up to the circuit court on the appeal thereto,
and that court erred in refusing to entertain the sugges-
tion of a diminished record. The assessment of dam-
ages and benefits must be made in the circuit court on
the basis that the agreements are valid.

3. It is unnecessary to consider the other question,
to the effect that the circuit court could only try the
case presented by the record filed in that court; for, as

has been said, it was the duty of the circuit court to order up a full and complete transcript, one which would include the agreements and ordinance of May 28, relating thereto.

4. The appellants objected to the jurisdiction of the circuit court, on the ground that they had come to a settlement with the city and were no longer parties to the suit. As to this objection, it is sufficient to say the appellants were brought before the mayor's court by due process of law, and the suit was never dismissed as to them. That the proceedings to condemn might, and we think should, have been dismissed as to them, does not affect the question of the jurisdiction of the circuit court.

5. We are next to consider the exceptions saved by Vineyard, another appellant. There was a frame house on a lot owned by Mr. Lampe, the lot being within the street lines. A brick house, fifty-one feet in length, owned by Hinchman, projected some seven feet into the proposed street. Both of these persons owned adjoining property, to which their respective houses could be moved. Some evidence was received tending to show that these houses could be removed to the adjoining property, at an expense less than the value of the houses. On this evidence the defendant Vineyard asked an instruction to the effect that if these buildings could be removed to the lands of the owners thereof not taken, and would be as valuable and useful when removed as before, then the measure of damages would be the expense of such removal and rental for the time lost while making the removal. This instruction the court refused, and of this ruling error is assigned.

The charter provides that "the jury shall first ascertain the actual damages done to each person or corporation in consequence of the taking of their property for such purposes, without reference to the proposed improvement, as the just compensation to be

made therefor." The clear command of the charter is that the owner shall have the actual damages done in consequence of taking his property for a street. The city seeks to condemn the land, and the houses are a part of the realty, and must be paid for as realty. The cost of removing the houses has nothing to do with the measure of damages, for they become the property of the city, so far as they are taken by the city. *Mississippi River Bridge Co. v. Ring*, 58 Mo. 491; *Finn v. Gas & Water Co.*, 99 Pa. St. 631; Mills on Em. Dom., sec. 223.

The case of *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582, is not in point. The question there considered was as to whether defendant could have compensation for damages to property not taken, but used in connection with that which was taken. In discussing the measure of damages it was assumed, not decided, that the defendant had the right to remove the malthouse, horse-power, pump and pipe from the property actually taken; for there was no contest between the parties to the suit on that point. Cases are cited which hold that the establishment of a road through timber land does not deprive the land-owner of his property rights in the timber growing thereon, but we do not consider them applicable to this case. They stand on considerations applicable to country roads. Should the city and the land-owner agree that the latter shall remain the owner and have the right to remove a house on the land to be taken, then the cost of removing the house might become an element of damage; but no such an agreement was made in this case. Here, the city seeks to take the property against the consent of the owner, and it must pay damages according to the terms of the charter. Buildings taken in whole or in part are to be treated as realty, so far as they are taken or damaged. There was, therefore, no error in refusing the instruction under consideration.

6. The city in its brief seems to concede the further proposition contended for by appellant Vineyard, namely, that no piece of property can be assessed with more benefits than the property so assessed will, in the judgment of the jury, receive from the proposed improvement. With this concession it is unnecessary to discuss the other instructions which were refused. The objectionable features can be readily removed. For the errors before noted the judgment must be reversed, and the cause remanded for further proceedings. BARCLAY, J., absent; the other judges concur.