City of St. Louis, Appellant, v. Gerhart Realty Company.
—40 S. W. (2d) 661.

Division One, June 24, 1931.

104

*Julius T. Muench, G. Wm. Senn* and *Seward McKittrick* for appellant.

*Marion C. Early* and *Ivon Lodge* for respondent.

HYDE, C.—This is a proceeding brought by the city of St. Louis under the provisions of Ordinance No. 32785, passed in February, 1924, which authorized the condemnation of private property necessary to extend a street known as Kingsbury Place east about 110 feet to DeBaliviere Avenue. The Gerhart Realty Company, a corporation, respondent here, owned an unimproved tract of land fronting 200 feet on the west side of DeBaliviere Avenue, about 100 feet deep. The extension of Kingsbury Place took a strip 50 feet wide through this lot, leaving a lot of about 121 feet on the north side of the extension and a lot about 28 feet wide on the south side. The

land taken from respondent's lot was the only land taken in the proceedings except a ten-foot strip in the rear of respondent's lot, which was held in the name of G. H. Dudley, trustee, as a passageway for other owners. A benefit district was created by the ordinance, which included the property of about forty-three other defendants.

Commissioners were appointed to assess the benefits and damages. Respondent's damages were assessed at $18,750. Benefits of $5,000 were assessed against the southern 50 feet of the large remaining lot, and $2100 against the small remaining lot. This left a net award of damages over benefits of $11,650. Respondent filed exceptions to the commissioners' report and a hearing was had thereon. The court sustained respondent's exceptions to the report and appointed other commissioners to make a new report These commissioners allowed damages of $32,500 for the land taken and consequential damages to the smaller remaining lot of $5,600, making a total of $38,100. They assessed benefits of $4,375 against the southern 75 feet of the large remaining lot and of $1400 against the small remaining lot, leaving a net amount of damages over benefits of $32,325. Both appellant and respondent filed exceptions to this report and a trial was had thereon. The court entered judgment confirming the second report, and this appeal is from that judgment. The evidence taken at both trials is preserved in the bill of exceptions.

The second award was on the basis of the valuation of $650 per front foot for respondent's property actually taken. Appellant's witnesses testified that the property was only worth from $350 to $400 per front foot and that the benefits to the remaining property were much greater than the commissioners assessed. The net award was from two to three times as large as their testimony tended to show the excess of damages over benefits actually was. Appellant also introduced evidence to show that the president of respondent company and some of its witnesses testified before the first commissioners that the value of the property was about $500 per front foot. Appellant's witnesses at the second trial also testified to the knowledge of many actual sales on DeBaliviere Avenue, between 1919 and 1927, which they said were in accordance with their valuation of respondent's property, considering their appraisal of the improvements on these properties sold, and deducting that from the total sale price.

Respondent's witnesses at the second trial testified that respondent's property was worth about $800 per front foot. They testified that the sales upon which appellant's witnesses based their valuations were of lots of smaller frontage; that such lots were of less value than a lot with the frontage of respondent's lot, because they were suitable only for small buildings, whereas respondent's lot was suitable for a large apartment or hotel building with stores on the ground

floor; that De;Baliviere Avenue was an excellent location for such a building; and that there were very few lots available on it large enough for this type of building.

Respondent was permitted over appellant's objection to introduce testimony concerning a proposal to lease respondent's entire 200-foot lot to one Rice for a hotel which Mr. Rice was to erect on the lot. Mr. Rice testified that no lease was made and that no papers were even drawn up. He said that the agreement was blocked by the condemnation proceeding. Over the objection of appellant he was permitted to testify that a nine-story hotel was to be built, with 200 rooms on the upper floors, ten stores on the ground floor on De-Baliviere Avenue, with three shops, a tea room and a dining room in the rear; that he was to take a lease on the entire building; and that he was to pay six per cent on a ground value of $1,000 per front foot and eight per cent on the building cost. Plans for the building were introduced in evidence. The architect who drew the plans was also permitted, over appellant's objection, to testify in detail as to the plans for the building.

Evidence was also introduced over the objection of appellant that there was a 40-foot strip of land west of respondent's lot, running from the east end of Kingsbury Place north to Westminster, the next street north, adjoining and parallel to the G. H. Dudley passageway. This strip was used as a private street. By special warranty deed the owner of the property which lay west of respondent's lot and which was subdivided into lots on each side of Kingsbury Place provided that the owners of the lots abutting Kingsbury Place should have an easement over it as a private roadway until it was abrogated by mutual consent. It was further provided in the deed that in case this street (Kingsbury Place) should be continued to DeBaliviere Avenue, the easement over this strip for private roadway should cease, and the full title free from such easement should be vested in the grantor. It was also provided, in such event, that the property should be sold and the proceeds divided among the parties to the deed or their successors.

Respondent has filed a motion to dismiss this appeal on the ground that the city has voluntarily paid the judgment in this case. Respondent's contention is that by making this payment the matter is finally terminated, and that the appeal presents a mere **Litigation. Payment: Further** moot case. The Constitution of Missouri, Article II, Section 21, provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners . . . and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested." In view of

this Constitutional provision, the city could not take possession of respondent's property and open the street until it did pay the compensation ascertained by the commissioners. It is the general rule in condemnation proceedings that payment into court of the amount of damages fixed by commissioners or the acceptance of the same by the property owner does not terminate the litigation, and either the condemnor or the landowner may proceed to trial and attempt to obtain a verdict for a different amount. [St. Louis, Memphis & Southeastern Ry. Co. v. Aubuchon, 199 Mo. 352, 97 S. W. 867; St. L. & K. C. Ry. Co. v. Donovan, 149 Mo. 93, 50 S. W. 286; St. L., Keokuk & Northwestern Railroad Co. v. Clark, 119 Mo. 357, 24 S. W. 157; Rothan v. St. L. O. H. & C. Ry. Co., 113 Mo. 132, 20 S. W. 892; 1 Nichols on Eminent Domain (2 Ed.), sec. 213.] The motion to dismiss the appeal is therefore overruled.

Appellant's first assignment of error is that the court should not have sustained respondent's exception to the first commissioners' report and should not have set aside that report and appointed other commissioners. Appellant does not refer to this assignment in its points and authorities and does not stress it in its brief. We might, therefore, be authorized to consider it abandoned; but appellant, in its contention that the assessment of damages by the second commissioners is excessive, indicates that it considers the result arrived at by the first commissioners to be a correct finding of respondent's damages. Respondent in its brief argues that the action of the court in sustaining its exceptions to the first commissioners' report was proper. The present charter of the city of St. Louis, Article XXI, Section 7 (as did the former charter, Article VI, Section 7), authorizes the court upon exceptions to review the commissioners' report and to order on cause shown a new assessment. Whether or not a new appraisement shall be ordered in any given case upon cause shown is left to the judicial discretion of the court. It is only an abuse of the discretion that would warrant the interference of this court. [City of St. Louis v. Buss, 159 Mo. 9, 1. c. 13; City of St. Louis v. Worthington, 19 S. W. (2d) 1066.] We find no abuse of such discretion in this case and will not interfere.

Appellant next complains of the admission of the testimony concerning the negotiations for a lease of respondent's property to Rice. The appellant objected to this testimony on the ground that these negotiations had not been consummated by a completed agreement. The court stated that the objection would be sustained unless they were consummated. The court then admitted the testimony upon the statement of the witness that they had agreed upon an arrangement for a building, but that they had no papers drawn up, and that their

agreement was blocked by a condemnation proceeding. Over repeated objections of appellant, he was permitted to testify about the plans for the building, and that the rental was to be upon the basis of the valuation of the land at $1,000 a foot, although no such lease was ever entered into or even drawn up. It seems that the plans of the building were made so that Mr. Rice and his wife could see how much money they could get to finance it. It seems very clear from the testimony about the negotiations that there was only an offer to make the lease if the building was built and that the building would be built if Rice could get the money. Nichols on Eminent Domain (2 Ed.), vol. 2, page 1194, section 454, says of this kind of evidence: ''Oral and not binding offers are so easily made and refused in a mere passing conversation and under circumstances involving no responsibility on either side, as to cast no light upon the question of value, and they are unsatisfactory, easy of fabrication and even dangerous. While all these objections might not apply in every case, it is thought best by most courts to reject evidence of offers altogether.'' Other authorities which sustain this rule are: 22 C. J. 179, secs. 123-124; 10 R. C. L. 956, sec. 129; 2 Lewis on Eminent Domain (3 Ed.), sec. 666, p. 1145; Sharp v. United States, 191 U. S. 341, 48 L. Ed. 211; Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 94 S. W. 860. There was no satisfactory showing here that the proposed building ever could or would have been built, and it was shown that no agreement, binding on anyone, was ever made. This evidence set the highest value on respondent's property of any evidence in the case. We hold that it was incompetent and inadmissible.

Appellant also complains of the evidence admitted to show that a 40-foot private street, running north behind respondent's property from Kingsbury Place to Westminster Avenue, would be closed as a result of the condemnation proceedings. There was considerable evidence that respondent's property would be damaged by other buildings being constructed upon this land. A deed was finally introduced in evidence, over appellant's objection, containing a provision that this land should revert to the grantor in the deed, free from any easement of travel over it, to be sold and the proceeds divided among the other parties to it if Kingsbury Place was extended east. It also showed that the agreement in the deed was entirely between the owners of the property on each side of Kingsbury Place and the grantor, and that it could be abrogated at any time by their consent. Respondent was not one of the parties to this agreement. He had no rights in this strip whatever. His property did not abut on it. It was not dedicated to the public for public use, but was only a private way belonging to the grantor and the owners of the property on each

side of Kingsbury Place. These parties and the grantor in the deed, after the completion of the condemnation proceeding, could keep it open as a private way if they desired to do so. They were not compelled to close it. It was their private property and they could do with it whatever they agreed to do. A similar contention was made in the case of Union Elevator Co. v. K. C. Belt Railroad Co., 135 Mo. 353, 36 S. W. 1071. The Elevator Company there claimed damages because the property to be taken would interfere with its rights to use the near-by track of a railroad for storing or standing cars. The court held that there was no evidence showing that they had any right to use the track for this purpose and that, therefore, they could not recover damages for interference with this use by them of another company's track. In New York, owners whose property abutted upon a private street, were refused damages for loss of the easement of light and air from the street where the city refused to accept it as a street and opened another street near it, which they claimed would cause the private street to be closed. [In re Wallace Avenue (N. Y.), 118 N. E. 506; In re White Plains Road, 170 N. Y. Supp. 1018.]

It may be true that the private way will be sold and a building built on it when the Kingsbury Place extension is completed. Nevertheless, that could have happened without the extension. Perhaps the owner of the filling station north of respondent's lot might decide that the extension of Kingsbury Place was a good reason for him to build a building which would interfere with respondent's light and air on that side. The city would not be liable for that. Respondent is not entitled to damages from the city because owners of private property voluntarily decide to do something with their property which they have a right to do. This evidence was also incompetent and inadmissible.

Respondent does not cite any authority or make any contention that any of this evidence was proper. Their contention is that there was other ample evidence to sustain the award of the commissioners.

**Award of Commissioners.** They say that appellate courts will not disturb a judgment awarding damages in the presence of substantial, supporting evidence. It is true that appellate courts will not set aside a judgment *on the ground that it is excessive* if there is substantial evidence to support it and that is the holding of the authorities cited by respondent. [City of St. Louis v. Smith, 325 Mo. 471, 30 S. W. (2d) 729; City of St. Louis v. Worthington, 19 S. W. (2d) 1066; Drainage District v. McCormick, 260 S. W. 77; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S. W. 647.]

It must, however, be remembered that the purpose of the trial upon appellant's exceptions was to determine whether or not the award should be vacated and the exceptors afforded a trial *de novo.* [City of St. Louis v. Schopp, 325 Mo. 480, 30 S. W. (2d) 1. c. 735.] In

order to sustain the assessment made by the commissioners, the court was required to find that respondent's property was damaged in the amount assessed by the commissioners. The court did not go with the commissioners and had not seen what they saw nor heard what they heard. It could only determine this question from the evidence presented to it on the trial of the exceptions. As this court said in the Schopp case, 30 S. W. (2d) 733, l. c. 735: "The finding and judgment (of the court) must be based upon admissible testimony having sufficient probative force to sustain it. In the court's ruling, therefore, that the testimony of the commissioner was admissible, it must follow as a logical sequence that he regarded such testimony as embodying essential facts necessary to sustain his finding. Otherwise, he would have excluded it." So here the court must be considered to have regarded this incompetent evidence as necessary to his judgment for the amount of the commissioners' award. We therefore hold that because of the admission of this incompetent testimony, the judgment must be reversed.

Appellant also contends that the court erred in allowing a witness in the first trial to testify as to the price paid him in another condemnation proceeding for his property in the same neighborhood. Appellant, however, is not in position to claim that this is error prejudicial to it because in the second trial it introduced evidence of this fact itself as a part of the testimony of the president of respondent company before the first commissioners.

Appellant very strongly contends that the assessment of damages by the second commissioners is so excessive that it should be set aside. As pointed out, there is a wide variance in the testimony of the witnesses as to the value of the property. A judgment of condemnation, however, should not be set aside by this court because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another. [City of St. Louis v. Schopp, 30 S. W. (2d) 733, and cases cited.]

For the error in the admission of evidence, the case is reversed and remanded, in order that a hearing may be had on the exceptions, in accordance with the rulings of this opinion. *Ferguson* and *Sturgis,* CC., concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.