CITY OF ST. LOUIS, Appellant, v. SIMON D. ROSSI ET AL., BUSHNELL-POMMER REALTY COMPANY, a Corporation, et al.—64 S. W. (2d) 600.

Division One, October 19, 1933.*

---

*NOTE: Opinion filed at May Term, 1933, August 24, 1933; motion for rehearing filed; motion overruled at September Term, October 19, 1933.

1094·

*Julius T. Muench, G. Wm. Senn, Seward McKittrick* and *John M. Hodgen* for appellant.

*Theodore Rassieur, George M. Rassieur, Thomas Bond* and *Alfred C. Wilson* for respondent.

HYDE, C.—This case, coming recently to the writer, is a proceeding in condemnation. It was brought by the city of St. Louis, under the provisions of Ordinance 30318, approved March 26, 1919, providing for the extension of Skinker Road from Delmar Boulevard northeast to Hodiamont Avenue. Two other cases arising under the same condemnation proceeding have recently been decided by this court: City of St. Louis v. Rossi, 55 S. W. (2d) 946, and City of St. Louis v. Rossi, 58 S. W. (2d) 965. In this case, as in those cases, the report of the first commissioners was set aside, after a hearing by the court thereon, and a new assessment, by other commissioners, ordered. The city has appealed from the final judgment of the circuit court approving the second commissioners' report. Since there was only one record made in the whole proceeding in the circuit court at the hearing on the report of the second commissioners, this case requires a consideration of the records in the other two cases, although the city has attempted to segregate the portions of the record applicable to each. Some of the questions, concerning the trial upon the first commissioners' report, raised herein, have been settled in the two former opinions, but the determination of this case requires that these contentions be first disposed of, in order that we settle just what are the limits of our review.

■ When the first commissioners appointed to assess benefits and damages filed their report, respondent filed exceptions thereto. A hearing was had before the circuit court upon respondent's exceptions and the court sustained them, set aside the report, and thereafter appointed new commissioners. The city's exceptions to this action of the court have been properly preserved by a term bill of exceptions. The city makes assignments of error, as to the trial upon the exceptions to the first report, concerning the admission of evidence

for respondent and the refusal of declarations of law requested by the city. These cannot be considered. Under the procedure for assessing benefits and damages provided by the charter of the city of St. Louis, a commission of three freeholders is appointed to make an award. Their report is presented to the court as the basis for a judgment, *after a hearing upon it,* and this report does not, as in cases under the procedure providing for condemnation by corporations, become *functus officio* when exceptions are filed. [See Art. XXI, Secs. 1-8, Charter of St. Louis.] Their award is more like the verdict of a jury under the corporation condemnation procedure. However, since the court, which must pass upon the correctness of their report, does not go with the commissioners and does not have before it the evidence and facts which influenced the commissioners, it must, from the necessity of the case, hear evidence to determine whether or not it is correct. [St. Louis v. Abeln, 170 Mo. 318, 70 S. W. 708; City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S. W. (2d) 661; City of St. Louis v. Turner, 331 Mo. 834, 55 S. W. (2d) 942.] The court, therefore, hears evidence so it can determine whether the commissioners' report is right or wrong. "The present charter of the city of St. Louis, article 21, section 7 (as did the former charter, art. 6, sec. 7), authorizes the court upon exceptions to review the commissioners' report and to order on cause shown a new assessment. ■ Whether or not a new appraisement shall be ordered in any given case upon cause shown is left to the judicial discretion of the court. It is only an abuse of the discretion that would warrant the interference of this court." [City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S. W. (2d) 661.] "If there was no substantial evidence that the commissioners' report was wrong, . . . the trial court abused its discretion in setting it aside and ordering a new assessment." [City of St. Louis v. Turner, 331 Mo. 834, 55 S. W. (2d) 942.]

■ The question to be determined by the trial court in its hearing upon the exceptions to the first commissioners' report was whether the report was wrong (whether the damages awarded were clearly inadequate) and should be set aside, or whether the report was right (whether the damages awarded were substantially correct) and should be sustained. The decision of this question is left to the judicial discretion of the circuit court. "On the mere question of value, depending on conflicting evidence, the circuit court should hesitate to interfere with the commissioners' finding, although, in a proper case, it has undoubtedly the right and duty to do so. A board of commissioners is the tribunal provided by our Constitution to do justice in such cases between the city and the citizen. . . . Their finding on a mere question of value is entitled to great weight with the trial judge when he is hearing exceptions to their report." [St. Louis v. Brown, 155 Mo. 545, 567, 56 S. W. 298, 303.] ■

"Therefore, where the trial court has exercised its judicial discretion and set aside a commissioners' report, and has thereafter entered judgment sustaining a new appraisement, the question for review here is not whether the trial court, in its consideration of the first report, erred in the admission or exclusion of some of the evidence but whether there was any substantial competent evidence that the commissioners' report was wrong.'' [City of St. Louis v. Rossi, 55 S. W. (2d) 946.] ■ If the question concerns only assessment of benefits the circuit court has authority on review of the commissioners' report to assess benefits anew. [City of St. Louis v. Hanley Realty Co., 329 Mo. 1172, 48 S. W. (2d) 938.] However, when it concerns the question of damages the circuit has no power to change or modify the report of the commissioners as to damages because of the provisions of Section 21, Article II of our Constitution. [City of St. Louis v. Rossi (Mo.), 58 S. W. (2d) 965; City of St. Louis v. Buss, 159 Mo. 9, 59 S. W. 969.]

■ Appellant does make the point that respondent failed to produce substantial evidence tending to show that the first commissioners' report was wrong, but argues this only upon the weight of the evidence. Respondent produced a number of witnesses who testified to a square foot value of $1.50 to $2.50 which was from two or three times the amount of damages allowed by the commissioners. It was clearly substantial evidence that the report was wrong and if believed by the court warranted its action in setting aside the report and ordering a new appraisement. The city seems to contend that there might still be further proceedings or action upon the first report if this cause should be reversed and remanded. That might be true, if we determined that there was no substantial evidence to sustain the court's action setting it aside. [See City of St. Louis v. Turner, 331 Mo. 834, 55 S. W. (2d) 942.] However, when it is thus determined that the court properly set it aside, it is out of the case forever; and that is the situation here.

Proceeding with the review of the judgment upon the second commissioners' report, which is all that is left in the case, we find that in connection with the extension of Skinker Road, and to conform to its width, Hodiamont Avenue was widened from sixty to eighty feet. The property of the Bushnell-Pommer Realty Company, respondent herein, lies between Hodiamont Avenue and the Wabash Railway, fronting 473 feet on Hodiamont Avenue. It was 408 feet wide at the north end along Maple Avenue and somewhat narrower at the south end adjoining the property of Donk Brothers Coal Company. Along the whole front of respondent's property a strip twenty feet wide was taken to widen this street. This strip widened to about thirty feet at its extreme south end. Respondent's property was subject to four leases, each covering separate portions thereof, and was used by the lessees for coal yards. The particular questions

raised in this case, which were not decided in the two former cases, are concerning the procedure and measure of damages where the land condemned is leased. ·

The Union Fuel and Ice Company had a lease on the north 197 feet of the property which had been made in 1917 and expired July 1, 1921. It paid $250 per month rent. The Stephan Coal Company had a lease on the south 121 feet, $10\frac{1}{2}$ inches, which had been made to another company and assigned to it. This lease was made in 1912 and expired on the first day of January, 1922. This company paid $125 per month rent. The land between these two tracts, except a part which was used as a common driveway, was held under two leases by S. W. Weissenborn and Son. Part of the property occupied by the Weissenborns had been leased to another company and assigned to them. This lease was made in 1918 and expired January 1, 1929. They paid $150 per month for this part of the property. The other lease under which the Weissenborns held was made direct to them in 1916 for five years with a five-year renewal privilege so that it expired July 1, 1926. They paid $75 per month for the part of the property it covered.

As above stated, the effective date of the condemnation ordinance was March 26, 1919. Under Section 5, Article XXI, of the Charter of St. Louis, the commissioners are required to "assess the damages and benefits as of the date the ordinance became effective." The first commissioners' report was filed March 27, 1924. On February 26, 1925, after hearing on respondent's exceptions to the first commissioners' report, the city deposited for respondent the sum of $4803.25, which was the difference between the damages and benefits assessed as to respondent's property in the first commissioners' report. Thereafter, the first commissioners' report was set aside and new commissioners appointed. The second commissioners' report was filed October 25, 1926, and trial of the city's exceptions thereto, the appeal from which is the case before us, was had in 1927.

The second commissioners' report assessed total damages of $11,-438.34, and assessed no benefits. Upon the trial of the city's exceptions to the second commissioners' report, the city had evidence tending to show a value of the respondent's land taken of from thirty-five cents to sixty-five cents per square foot, which would range from about $3345 to about $5734 for the property taken. The city's evidence also tended to show special benefits as great as $4500, and with no consequential damages whatever. Respondent, on the other hand, had evidence to show that the value of the amount taken was from $1.50 to $1.75 per square foot, and that there were no special benefits to the remaining land. Its evidence, if accepted at full value, would justify an award of damages of $15,000 or more. Respondent, however, brought in one of the commissioners who, without any objection from the city, proceeded to tell exactly how the commis-

sioners arrived at their award and what items it included. As to the value of the land and improvements, on his direct examination, he said:

"We value the Bushnell-Pommer property at 78 cents a square foot; . . . There was taken 9,555 and fraction square feet, figuring at seventy-eight cents, $7,453.34. . . . Everything being considered, we thought the damages consequential to being a smaller piece and the benefits would about offset each other. The difference between this figure, $7,453, which we allowed for the taking of the land, and the $11,438.34, which is the amount of our report, was damage to the improvements and the use by right of occupancy under certain leases. . . . Building No. 973, Hodiamont, we considered there was no damage because the salvage for the material would have exceeded the cost of removing the building. But there was a scale and we figured that the salvage value there—I mean the removal—the whole value of the scale and the cost, the difference between the salvage and the removal, would be $400. . . . Q. There was another building there that you allowed for? A. No."

The amount allowed for the value of the land taken and improvements thereon, therefore, was $7853.34. The rest of the commissioners' award was made up of allowances for unexpired leases which, according to this commissioner's testimony, was arrived at in the following manner:

"There was a leasehold (Union Fuel Company) where there was twenty-four months to run—from the time of the landlord's execution to the effective date of the ordinance, and that leasehold was on property that was lessened as to its car capacity by two cars—two railroad cars, by reason of the taking of this strip. . . . We had to allow the whole thing as to two-car capacity lost. Now, that we figured was a fifth of the useful capacity of that track. The rental of that tract was $250 a month. We figured that it had been damaged to the rate of $50 a month because of its reduced capacity and that extended for twenty-four months amounts to $1,200, which we allowed as damages. . . .

"Q. There was an award there of $2,285 to the Weissenborn Coal Company. How did you arrive at that? A. The Weissenborn Coal Company had two leases. . . . we didn't understand from our examination of the record that there was any exception taken to the report of the commission that preceded them. . . . We determined that the right to that damage, whatever it was fixed by the other commission, should go to Weissenborn. . . . (As to Stephan Coal Company.) We did allow the sum of $100 for the lot—use and occupancy of that leasehold from the term of the leasehold up to the effective date of the ordinance on the Stephan property."

Upon cross-examination he summarized the items making up their award as follows:

"The elements constituting our total here, if you will put them down. They are as follows:

"Stephan Coal Company, damage by unexpired term of lease, $100; damages to scale out on 973 Hodiamont avenue, $400; damages to lease unexpired, $1,200; value of property taken, site, $7,453.34. Now, that is all we allowed to Bushnell-Pommer. . . .

"Now, in my report, we allow this $2,285 to Weissenborn—that is in addition to these figures that I gave you here."

■ At the time of the hearing on the first commissioners' report the Union Fuel Company and the Stephan Coal Company had assigned their rights to respondent. The commissioner stated that, for that reason, the allowances for them were made to respondent. At the time of the hearing on the second commissioners' report, the Weissenborns had also assigned their rights to respondent so that respondent is now entitled to all of whatever award of damages may be ultimately approved for the taking of the property. The city's contention is that the commissioners allowed respondent the full value of the property and improvements taken and then allowed additional amounts for the value of the leasehold interests, so that the result is that the city is not only required to pay the full value of the property taken, but is also required to pay additional allowances for part of it in the total sum of $3985, which amounts to paying twice for the value added by the leases. The city also contends that all of the leases had expired, except Weissenborns', before the city became entitled to possession of the property by paying the amount of the first commissioners' award into court; that Weissenborns were not disturbed until after both of their leases expired; and that, since all of the lessees were permitted to live out the full terms of their leases, they suffered no damage so that the city should not be required to pay anything for damage to their interests.

The well-established general rules of eminent domain seem to be that when a piece of property is taken, in which the ownership is divided into several interests, that as between the public and the owners, it is considered one estate; that the public right is exercised; upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interests is entitled is no concern of the condemner; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemner must pay and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all

the parts cannot exceed the whole. These principles seem to be supported by the following cases: Penny v. Penny (Eng.), L. R. 5 Eq. 227; Bartlow v. C., B. & Q. Railroad Co. (Ill.), 90 N. E. 721; C., B. & Q. Railroad Co. v. Reisch & Bros. (Ill.), 93 N. E. 383; C. & N. W. Ry. Co. v. Miller (Ill.), 95 N. E. 1027; Lambert v. Giffin (Ill.), 100 N. E. 496; Paducah, etc., Railroad Co. v. Dipple (Ky.), 16 Ky. L. Rep. 62; Edmands v. Boston, 108 Mass. 535; Burt v. Merchants' Ins. Co., 115 Mass. 1; P. F. R. & N. S. B. Co. v. Fall River (Mass.), 72 N. E. 338; Cornell-Andrews Smelting Corp. v. Boston & P. R. Corp. (Mass.), 89 N. E. 118; Id., 95 N. E. 887; Id., 102 N. E. 625; Barnes v. Springfield (Mass.), 168 N. E. 78; C. S. & M. Railroad Co. v. B. C. & B. C. Railroad Co. (Mich.), 64 N. W. 471; Kafka v. Davidson (Minn.), 160 N. W. 1021; State ex rel. Kafka v. District Court, 151 N. W. 144; State ex rel. Youngquist v. Anderson (Minn.), 223 N. W. 923; Pa. Ry. Co. v. Natl. Docks & N. J., J. C. Ry. Co. (N. J.), 30 Atl. 183; Id., 35 Atl. 1130; Zimmerman v. H. & M. Ry. Co. (N. J.), 71 Atl. 127; Daab v. Hudson City Park Comm. (N. J.), 71 Atl. 51; Herr v. Board of Education (N. J.), 83 Atl. 173; Wiggin v. New York, 9 Paige, 16; Coutant v. Catlin, 2 Sandf. Ch. 485; In re Park Commissioners, 1 N. Y. Supp. 763; In re Daly, 51 N. Y. Supp. 576; In re Delancey Street, 105 N. Y. Supp. 779; In re Seventh Avenue, 188 N. Y. Supp. 197; Portland v. Postill (Ore.), 263 Pac. 896; Crangle v. Harrisburg, 1 Pa. St. 132; Getz v. P. & R. Ry. Co., 105 Pa. St. 547; State ex rel. Long v. Superior Court (Wash.), 141 Pa. 906; Spaulding v. M., L., S. & W. Ry. Co. (Wis.), 14 N. W. 368, 15 N. W. 482; see, also, 2 Lewis, Eminent Domain (3 Ed.) 1253, sec. 716; 1 Nichols, Eminent Domain, 707, sec. 231; 10 R. C. L. 134, sec. 118; 20 C. J. 850-853, secs. 287-288, p. 864, sec. 296, pp. 998-999, sec. 395. Many of these cases were reviewed by this court en Banc in State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S. W. (2d) 80, 69 A. L. R. 1256. After quoting from some of them this court said:

"The doctrine of the cases tersely stated is this: The aggregate values of all the particular interests and estates in a single parcel of land do not exceed the value of the property as a whole, which the State takes by paramount title for public use; when, therefore, that value is duly ascertained and paid in money to the owners of the various interests, or into court for them, constitutional requirements are fully complied with. The fund is substituted for the property taken. The fact that the owners of the constitutive interests may not agree as to the apportionment among themselves of the sum awarded is merely an incident growing out of such combined ownership for which the condemner is in no way responsible."

This court also in that case reviewed the charter provisions of the city of St. Louis, which it was contended required a separate ap

praisement by the commissioners of each interest in every tract of land condemned and said:

"The various elements of the ownership of modern city property are so numerous and so complex that if commissioners were compelled to segregate and value separately each particular interest therein, their work being frequently halted to await settlement in court of the controversies that inevitably arise among the owners of the interests, there would be no end to a condemnation proceeding such as the one here involved. In the absence of explicit language requiring the separate valuations of such interests, it cannot reasonably be held that the framers of the charter intended that public improvements should be so delayed."

The result of that case was that this court approved the method there adopted by the commissioners of assessing one sum for the damages to all the owners of each lot or tract taken, leaving the owners of the fee, lessees, trustees, mortgagees and sublessees to apply to the circuit court for apportionment of the damages between them according to their various interests. It would seem that, if the matter of determining the parties entitled to share in the damages awarded for land taken and the portion thereof each was entitled to receive, was left to the commissioners, under the procedure provided by the St. Louis Charter, we would have a board of real estate experts passing upon all kinds of intricate questions of law in what is, perhaps, the most technical branch of the law, real property. That seems from the record here to be what the commissioners did in this case. We can imagine the snarls and tangles which would result when they were called upon to determine not only such questions as arise between owners, lessees, sublessees, and mortgagees, but also when they should undertake to decide whether some of the interests were vested or contingent remainders, whether there had been a merger of estates, whether trusts existed and if so, whether they were active or passive and the rights between life tenants, remaindermen, trustees and beneficiaries. It would be more practical to limit the activities of these commissions to the field with which they are familiar, the consideration of values of property taken, damages to remaining property resulting from the taking and benefits reflected in increased values resulting from the improvement; and to leave the questions of law which necessarily arise in apportioning the damages when there are several interests in any particular tract to the tribunal which has judicial authority. In short, leave values to the board of commissioners, and law to the court. Of course, when the whole case is heard *de novo* by a jury in the court, under the corporation procedure, where the evidence is passed upon and the law declared by the court, the situation is different. However, under the St. Louis Charter procedure, the court upon exceptions to a commissioners' report does not try the case *de novo*, and cannot do so,

as to damages. As pointed out, it hears evidence to determine whether their report is right or wrong. If the commissioners have acted upon erroneous principles as to the measure of damages (especially where this results in awarding the full value of property to one party and additional amounts to others) their report, obviously, is wrong. Therefore, the report in this case cannot stand.

The case which seems to be most frequently cited as authority for an exception to the general rule as to damages is Baltimore v. Latrobe, 101 Md. 621, 61 Atl. 203, 4 Ann. Cas. 1005. That case recognizes the general rule that the value of the various parts should not be greater than the value of the whole, but points out that the property involved in that case, about three-fourths of which was taken was subject to an irredeemable ground rent lease peculiar to that state. Under such a contract the leasehold interest was usually far more valuable than the reversion. The court discussed the situation as follows:

"Ground rents, especially in Baltimore City, are constantly being sold, and have market values (resembling somewhat those of bonds and stock) depending upon the manner in which they are secured and the length of time they are to continue. . . . What rule shall prevail in this State, where the system of ground rents is peculiar, when a portion of a lot subject to an irredeemable ground rent, renewable forever, is taken under the power of eminent. domain? When the entire lot included in the lease is taken, the question is one of comparatively easy solution; but when, as in this case, only a portion is condemned, many difficulties are suggested, and it is not easy to adopt a general rule that will always do full justice to the condemning party, the owner of the fee, and the leaseholder. The condemning party, as a rule, ought not to be required to pay for *the two* interests more than the portion taken would be worth if owned by one person. . . . But it is impossible to provide by a general rule for all contingencies in such cases, and after all it is for the jury to determine what their respective interests are worth; and we are therefore of the opinion that owing to the peculiar character of this class of property, if it be proven that the reversioner's interest was worth $10,000 and the leaseholder's $52,-500, the latter sum could be allowed, although the whole property, if no ground rent had been on it, would only have been worth $60,000. We say that because each is entitled under the Constitution to be compensated in damages for the amount of his interest taken, and, if it be true that the values of the two interests are more than what the lots would be worth, if owned by one person, the necessities of the case require an apparent exception. to the general rule announced above as to what the condemning party must pay. . . . But the jury or other tribunal authorized to make the award should

**1106**

always keep the value of the entire property in mind, and should limit the whole amount to be paid to that value, unless it is clearly shown that the lessee is entitled to more than the difference between what they allow the reversioner and what the whole property would be worth in the market, if there had been no ground rent.''

What the court there really seems to have finally decided was not the proper amount of damages but the necessity of apportioning the ground rent (reducing the amount which was to be paid in proportion to the reduction on the size of the lots), in connection with determining the damages. It does not seem sound to us to say that it might be proven that a whole property would be worth $60,000, while the interest of the leaseholder and the reversioner together would be worth $62,500; but it would seem more reasonable that the whole property would be in fact worth $62,500 because of the ground rent lease, but would have been worth only $60,000 if not so leased. It is, of course, true that a favorable lease does increase the value of property and that the amount of income which is derived from property is always properly considered in determining its value. However, there is no such ground rent leasehold in this case and we think the rule stated by this court in the Hall case is the sound rule, and must be followed in this case.

The respondent has proven that the commissioners did not adopt that rule in this case. Instead, they assessed the full value of the property and improvements and made an allowance for it to respondent as owner of the property. In addition to that they made an allowance to respondent as assignee of the rights of two of the lessees for what they found to be the value of their leases unexpired at the time the ordinance was approved. In addition to that they made another allowance to the Weissenborns for what they found to be the value of the unexpired leases which they held. This, necessarily, amounted to a double award for the leaseholds. The value which the income they produced added to the property, at the effective date of the ordinance, was considered in making the allowance to respondent (which was proper); and then other amounts were included in the award for the value of these same leases (which was wrong). Furthermore, the commissioners failed to make any report of the benefits assessed, although respondent's evidence is that they found benefits but did not report them because they considered the benefits and consequential damages would about offset each other. Section 5, Article 21, of the charter of St. Louis plainly requires commissioners to report both damages and benefits and does not authorize them to cancel one against the other and report neither. One reason why such benefits should be reported is that they would ordinarily be deducted from the owners' award and when it comes to apportioning the award between owners and lessees the court should know what the commissioners considered the bene-

fits were. ▉ Respondent now says that the testimony of the commissioner concerning the award should not be considered because the conclusiveness of the award cannot be impeached by the testimony of one of the commissioners; that that would, no doubt, be good law if the report was being collaterally attacked in a proceeding to apportion the award between the landlord and tenant as in the case respondent cites. [McAllister v. Reel, 53 Mo. App. 81.] The purpose of the present proceeding was to determine whether the award should be sustained or set aside and its correctness was the issue before the court. It is elemental that it could not be held a proper award if it was the result, both of applying erroneous rules as to the measure of damages and of allowing improper items of damage. Whether or not the exceptor could have used a commissioner to so show, we need not decide here. (It may be noted that St. Louis v. Schopp, 325 Mo. 480, 30 S. W. (2d) 733, in spite of the broad language quoted from other cases, really only decides that testimony of a commissioner, under the St. Louis procedure, as to whether he considered their award liberal and their reasons for arriving at property values (which calls for conclusions about the question before the court—reasonableness of award), could not be admitted to sustain the amounts awarded as being fair values.—Is not testimony, showing that improper items were included, a different matter when the purpose of the proceeding is not to assess damages *de novo* but to directly inquire into their award to determine whether or not it can stand?) Here, however, the commissioner was respondent's witness and testified to the improper method of assessing the damages followed by the commission and the improper items included in it upon his direct examination. A party cannot produce a witness, ask him questions, and then when his answers are unfavorable, be heard to say that the court should not consider them. Respondent, by introducing this testimony, waived all rights to object on appeal to its competency.

▉ Since the damages were assessed upon such erroneous principles and the benefits were not assessed at all, this commissioners' report cannot stand; and since the court cannot determine damages, the report will have to be set aside and a new assessment made. It is, therefore, proper to point out the rules which should be followed in making it. The city charter, Section 21, Article 5, requires them to assess both damages and benefits as of the date the ordinance became effective. They should assess the damages as of that date (March 26, 1919), considering both the value of the land taken and the consequential damages, if any, to the remaining tract. In arriving at its market value it is proper for them to take into consideration the leases then upon the property, the income which the property owner derived therefrom, and how long they continue after

that date, as well as all other matters which go to make up the market value of property; and that would include the value added by buildings and improvements. The rule they adopted for valuing improvements (difference between the cost of removal and the value of salvage) is not correct. They should find and allow as damages for the land taken, the value of such land with the buildings thereon as a whole; that is what the land, improved as it was on March 26, 1919, was then worth. They should, therefore, as to buildings or other improvements affixed to the soil so as to become real estate, instead of valuing the land and buildings separately, consider the amount which such buildings add to the market value of the land taken and arrive at the value of the whole (injury to buildings on land not taken, if any, should be considered in connection with consequential damages) without regard to who put the buildings there or the right to remove them. These are matters to be considered when it comes to apportioning the damages between the owner and lessees but do not concern the commissioners. [10 R. C. L. 141-143, secs. 124-125; 20 C. J. 728-730, sec. 188, pp. 799-804, secs. 247-250; Nichols, Eminent Domain, 693, sec. 227; 2 Lewis, Eminent Domain (3 Ed.) 1269, sec. 726; Kansas City v. Morse, 105 Mo. 510, 16 S. W. 893; St. Louis v. St. L., I. M. & S. Ry. Co., 266 Mo. 694, 182 S. W. 750.] They should also assess the special benefits, if any, which the remaining property will derive from the widening of the street in increase of value thereby. They have nothing whatever to do with the apportionment of the amount of damages they find should be paid for the taking and damaging of property. How that fund when it is paid into court will be apportioned between the owner and the lessees is no concern of theirs or of the city's. Likewise, the matter of whether or not the lessees were permitted to live out their lease or whether they have assigned their rights to the landlord is a matter which concerns only those parties, and the court when it apportions the fund. In this case there will be no apportionment to make because when the damages and benefits are properly assessed the respondent will be entitled to the whole award, having acquired all other outstanding rights in the property. This fact renders the many other questions, as to the lessees' rights and measure of damages discussed in the briefs, moot questions.

The judgment is reversed and the cause remanded with directions that the circuit court proceed therein in accordance with this opinion. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

## On Motions for Rehearing.

HYDE, C.—Motions for rehearing having been filed by both parties, we have carefully reconsidered the entire record. We are satisfied that the principles stated in the opinion herein are correct and that both motions should be overruled. However, respondent indicates a desire to have the litigation terminated without another appraisement and states its willingness to waive any right to consequential damages to accomplish this. Although we cannot uphold the whole amount of damages assessed for the reasons stated in the opinion, we think that the amount shown to have been assessed by the commissioners as damages only for the property taken and improvements thereon, $7853.34, could be held proper under the evidence in this case. It may be, therefore, that respondent is willing to remit the difference between that amount and the total award of $11,438.34. If so, it should have the right to do so, and it would be proper to affirm the award of $7853.34, which would be considerably more than was allowed respondent by the first award. Respondent, having acquired the rights of all the leaseholders, is entitled to all the judgment and there are no other interested parties.

It is, therefore, ordered that if respondent will within ten days enter, as of the date of the judgment, a *remittitur* of $3585, the judgment will be affirmed. Otherwise, it will be reversed and remanded, with directions, as heretofore ordered.

PER CURIAM:—The foregoing opinion by HYDE, C., on motions for rehearing is hereby adopted as the opinion of the court. All the judges concur.