CITY OF ST. LOUIS v. HAMLEY REALTY COMPANY ET AL., CALVARY CEMETERY ASSOCIATION, Appellant.—48 S. W. (2d) 938.

Division One, April 2, 1932.

*J. L. Hornsby* for appellant.

*Julius T. Muench* and *Jacob F. Pfeffle* for respondent; *Oliver Senti* of counsel.

RAGLAND, J.—This suit was instituted February 5, 1923, by the city of St. Louis as plaintiff against the owners of the property abut-

ting on both sides of West Florissant Avenue from Union Avenue to Kingshighway Northwest, for the purpose of condemning the right to grade West Florissant Avenue between those two streets.

The property of appellant is the Calvary Cemetery which has a frontage of 5,174 feet on the north side of West Florissant. In due course of the proceeding the circuit court appointed three commissioners to assess the damages and benefits, as provided by law. The commissioners filed their report on October 9, 1925, in which they allowed appellant $10,300 as damages to its property by reason of the grading of Florissant Avenue, and assessed, as special benefits to appellant's property exactly the same amount, $10,300. Appellant thereupon filed its exceptions to the report of the commissioners so far as the assessment of special benefits were concerned, claiming that its property was in no wise specially benefited by said grading, and that if benefited at all the amount of special benefits, so assessed, was excessive and unjust. These exceptions were heard by the court, in conformity with the provisions of the City Charter, and on the evidence submitted by the parties the exceptions were overruled. Thereupon, on December 10, 1928, the court rendered its final judgment in the cause approving and confirming the report of the commissioners. In due course the Calvary Cemetery Association was allowed an appeal to this court.

There are a number of assignments of error. As only one has been briefed the others will be considered abandoned. The one briefed is stated as follows:

"Under the evidence in this case, and particularly in the light of the testimony of the two commissioners, Rollins and Willow, the assessment of any special benefits, and certainly benefits in the amount of $10,300, against appellant's property is a gross injustice and wrong."

In a proceeding of this kind under the Charter of the City of St. Louis the review of the commissioners' reported by the circuit court, on exceptions filed, is essentially, a trial *de novo*. On such hearing the court may itself assess benefits anew. [Charter, Art. XXI, Sec. 7; St. Louis v. Buss, 159 Mo. 9, 59 S. W. 969.] Under the foregoing assignment, the only question requiring our determination is whether the finding and judgment of the circuit court, in so far as they affect the assessment of benefits against appellant's property, are supported by substantial competent evidence.

Before considering the sufficiency of the evidence some elimination is necessary. The exceptor (the appellant here) called two of the commissioners, Rollins and Willow, as witnesses. It interrogated each of them at length as to the methods that were followed by the commissioners in making the assessment of special benefits, and as to the elements of special benefits which each of them took into con-

sideration in arriving at the sum of $10,300. The testimony was wholly irrelevant. The questions before the court were: Did any special benefits accrue to exceptor's property by reason of the street improvement? If so, what was their value? The court was not concerned as to whether the commissioners followed erroneous methods, or took into consideration improper elements, in making the assessment which they made. [St. Louis v. Schopp, 325 Mo. 480, 485, 30 S. W. (2d) 733.] The testimony relating thereto will therefore be disregarded.

West Florissant Avenue was, at the time of the institution of these proceedings, an old, established highway extending for a long distance in each direction beyond the limits proposed to be graded. It had an undulating surface corresponding in a general way with the contour of the land abutting the street. The proposed grading contemplated bringing the surface of the street nearer to a level grade along the entire distance between the two terminal points named. Blue prints and plats were offered in evidence showing the comparative elevations at different points along the street both before and after it had been graded and the adjoining cemetery property. The evidence offered by exceptor tending to show that the grading did not specially benefit its property is fairly summarized in the excerpts from the testimony of two of its witnesses. The superintendent of Calvary Cemetery testified:

"The frontage of the cemetery land on Florissant Avenue, before the change of grade of the street, was, I think, on grade with the center of the street, though some portions were lower than the center of the street; the water from those portions that were lower drained off of Florissant Avenue into the cemetery; the lowest portion of the frontage on this street was more than three feet below the street, I would say about five feet; there were about three locations on Florissant Avenue that were lower than the center of the street, and there were about five places where the cemetery property was higher than the center of the street, probably about six feet higher. After a heavy rain the water drained from the street into those lower places. Since the change of grade and since the city has put in sewers along Florissant Avenue, the property does not suffer from the same flow of water from the street except at one place opposite Emerson Avenue. I did not consider, in estimating the value of a lot, that the accessibility of surrounding streets to the cemetery would increase the value of the lot. The main entrance to the cemetery is at the corner of Florissant and Calvary Avenues. It is catercornered at these streets and faces Florissant Avenue. I would not say that the fact that there is a well-graded street immediately to the south of the cemetery increases the market value of the individual square foot lot in the cemetery. The fact that a well-graded road appears opposite to the cemetery on the south would improve the appearance

of the cemetery from the outside. The fact that the portion of the cemetery which received the drainage before this change of grade is not now subject to the same drainage from the road would not in any way help the value of the cemetery as a whole. I do not see that by having a well-graded, well-appearing road opposite the cemetery it would increase in any way the value of the square foot in the cemetery. It would not help the value at all. The fact that there was a well-graded road opposite the cemetery would increase the accessibility to the cemetery, but this would not in any way affect the market value of the lots in the cemetery. . . .

"There has been no increase in the selling price of lots in the cemetery since the grading of Florissant Avenue was accomplished. Calvary Avenue, with reference to Union Avenue, at Florissant Avenue is about 300 feet south of Union Avenue. Florissant Avenue runs approximately in a northwest direction. There are not over five funerals a year coming to the cemetery on Florissant Avenue from the northwest, and the use of Florissant Avenue, northwest of Union Avenue, by those patronizing Calvary Cemetery is insignificant compared with the entire number of funerals which come to the cemetery. There are about thirteen funerals, on the average, per day, entering Calvary Cemetery, and only about five per year come on Florissant Avenue from the northwest."

The Engineer of Grades and Surveys of the City of St. Louis called as a witness by exceptor testified:

"Before the change of grade of Florissant Avenue, the surface went with the street, drained northeastwardly across Florissant Avenue and the cemetery property was subject to receive the drainage water on those occasions. According to my recollection drainage water from the street flowed into the cemetery property at station 1450 (referring to blue print), as the land in the cemetery at that point was lower across the cemetery land. The water ran into a ravine and on across the cemetery in a ditch. At Thrush Avenue the cemetery property falls northwardly across the cemetery along the valley of Harlem creek. Before the change of grade of Florissant Avenue, the drainage water went down the creek. The street is now so constructed that the drainage water goes into sewer inlets into a sewer in Florissant Avenue, and the cemetery is no longer subject to receive the drainage water from the street, i. e., from the improved portions of the street."

Plaintiff called as a witness one Thomas C. Turner who testified (quoting from the abstract):

"'That he lives in the City of St. Louis; is a relator by profession, and has been in the real estate business about ten years; he specialized in subdivisions of cemeteries; is sales manner of the Hiram Cemetery Association; is familiar with the district around West Florissant Avenue between Union Avenue and Tracy Avenue, and up

in that district, and until the previous November he had charge of subdivisions in that district; he dealt in real estate in that district between six and seven years; in buying property for cemetery subdivisions he considered the elements of location, transportation, contour of the ground and accessibility as an element of value; he would consider the fact that he had a well-graded road immediately opposite the cemetery in the value of cemetery property. In his opinion the reasonable market value of the property of Calvary Cemetery for cemetery purposes in 1923 was $3,000 an acre. In his opinion the reasonable market value of the Calvary Cemetery property after the change of grade of West Florissant Avenue in 1923, considering there are 230 acres unsold in that tract, would be one cent per square foot, or $536 an acre more on the market value, after the change of grade, approximately $13,000 more after the change of grade."

In view of the foregoing it cannot be said that there was no substantial evidence that appellant's property received special benefits and that the value of such benefits was $10,300. The fact that appellant's property lay adjacent to the street of itself created a presumption that the improvement conferred upon the property special benefits; whether such benefits were so conferred was for the court, as the trier of fact, to determine after hearing the evidence. [State ex rel. v. Jones, 15 S. W. (2d) 338.]

The judgment of the circuit court is affirmed. All concur.