THE CITY OF ST. LOUIS, a Municipal Corporation, v. FRANKLIN BANK, a Corporation, et al., Defendant; EIGHTH AND MORGAN GARAGE AND FILLING STATION, a Corporation, et al., Appellants.—Nos. 38524-38525.—173 S. W. (2d) 837.

Court en banc, September 7, 1943.

James E. Carroll and Igoe, Carroll, Keefe & Coburn for appellants.

*Joseph F. Holland, James B. Steiner* and *Oliver T. Johnson* for respondent.

692

ELLISON, C. J.—The movants, twenty-one owners or groups of owners of tracts of land abutting Morgan Street in St. Louis, appeal from a judgment of the circuit court of the City of St. Louis overruling their two motions in the above cause, one being entitled "Motion to Set Aside and Vacate Judgment," and the other "Motion to Set Aside and Recall Judgment or to Modify Same." The main action was a condemnation proceeding brought by the City to widen Morgan Street. The final judgment therein was rendered in the same court on September 17, 1934. The appellants' two motions were not filed until nearly seven years later, on August 6, 1941. At the hearing thereon it introduced evidence in support thereof.

The general rule is that a judgment becomes final on the expiration of the term at which it was rendered; and that the trial court thereafter has no power to modify or vacate it except upon a proper direct attack. Furthermore, when such an attack is made by motion and evidence is required to support it, the motion is treated as being in the nature of a writ of error. *coram nobis,* as to which there are legal restrictions on the issues that may be raised and the scope of the evidence that may be introduced. The respondent city invokes these doctrines, and also defends the original condemnation proceeding on its merits. The appellants do not dispute the foregoing as abstract propositions of law, but assert their motions challenge the *jurisdictional* validity of the judgment—a question that can be raised any time.

It is difficult to compress all of appellants' contentions into a single summarization at the outset. We shall discuss their legal theories in order, later. The factual basis on which most of them rest is as follows. For many years before the original condemnation suit was

brought and also before the present St. Louis charter was adopted, the City Plan Commission, the Board of Public Service, the Board of Aldermen, and corresponding predecessor bodies, had been endeavoring to work out a comprehensive, long range plan for the establishment of arterial highways radiating from the business district of St. Louis, with cross-highways feeding thereinto. This would require straighter, broader, well paved streets, which would speed up traffic and increase its volume. Such a street system, appellants say, would rush motor traffic *by* intermediate locations on the highways, but would work to the advantage of the city as a whole.

For the establishment of the traffic plan it would be necessary not only to determine the course, width and grade of these highways and to acquire the necessary land, but also actually to install them, which would include grading, paving, guttering, curbing and drainage. The mere acquisition of the right of way by condemnation would not benefit, indeed would actually damage, abutting and neighboring landowners unless the construction work were done. In other words no special, local and peculiar benefits could accrue to abutting and neighboring property owners unless and until the whole project on each such street were completed.

With this background the present charter of St. Louis was adopted in 1914 under sanction of Article IX of the State Constitution; and three years later a "Major Street Plan" was recommended by the Board of Public Service and approved by the Board of Aldermen. With subsequent modifications, it included Morgan Street as one of the east and west arterial highways from Third Street to Delmar Boulevard and Enright Avenue, a distance of 26 blocks. But the charter does not provide for a single proceeding in which all legal steps may be taken that are necessary to the completion of a given street project as a whole. Article XXI, ostensively at least, covers only the condemnation proceeding which must be resorted to in acquiring right of way and changing established grades; and in assessing damages and special benefits springing therefrom. Article XXII similarly covers the paving and other construction work necessary to complete the contemplated improvement as a whole. An the provisions of the two Articles are different.

Sec. 1 of Article XXI says such condemnation proceedings shall be initiated by an ordinance recommended by the Board of Public Service. It refers to *"*any public improvement or work* which will damage private property" as one of the public uses for which land may be condemned; also to the "opening, establishment or widening" of highways. By express mention thereof it further contemplates that such proceedings may apply to a "major highway or [841] traffic

---

*This and all following italics in quotations are ours unless otherwise noted.

artery." Once it refers to the objective of the condemnation as a *"public improvement."* A condemnation suit based on the ordinance is instituted by the city counsellor and the defendant property owners are personally served with summons. Any that are unknown or non-residents are served by publication.

The Article does *not* require a petition by the landowners as a prerequisite to the passage of such an ordinance initially, though later Section 10 provides that if the city shall dismiss any condemnation proceedings (based on such ordinance) "for any reason other than defect in the proceedings, it shall not begin a *like* action within ten years after such dismissal, unless, upon the petition of the owners of three-fifths (3/5) of the property proposed to be taken, . . . measured by frontage upon the proposed improvement, or upon condition that the city shall pay all of the damages assessed therein." Neither does it give the landowners the right of remonstrance. No advance estimate of the cost of improvement is called for, though Sec. 1A *permits* the Board of Aldermen to call upon the Board of Public Service for an estimate of the total damages to be occasioned by said public work or improvement, an outline of a suggested bene-- fit district, and an estimate of the probable aggregate benefits to be assessed therein.

Sec. 3 of the same Article XXI provides for a permanent board of commissioners appointed by the judges of the circuit court, who (with specified exceptions) shall assess all benefits and damages in condemnation proceedings, except that the landowner may demand a jury trial as to his *damages.* Sec. 4 says that in the condemnation of property for "highways . . . or the making of other *public work or improvements"* the commissioners shall ascertain the actual value of the property proposed to be taken and the actual damage thereto; and that for the payment of such damages the commissioners shall separately assess against *all* lands especially benefited by the proposed *public work or improvement"* the amount of such benefits.

Under Sec. 5 the commissioners fix a benefit or taxing district of which ten days public notice is given by advertisement. They thereupon hear evidence submitted by interested parties; assess the damages; and make a detailed, verified written report to the circuit court. Sec. 7 provides interested parties may file exceptions within 20 days, and upon such exceptions the court shall review the report, "and may order, on cause shown, a new assignment by said commission," or different commissioners, "or make such other orders thereon as justice may require." The section then goes on to say: "The court . . . may itself assess benefits anew." Next, Sec. 8 further provides: "The court upon approving the commissioners' report shall render final judgment thereon," and the landowners may appeal therefrom. In the instant case the appellants did not file exceptions to the report of commissioners, or appeal.

Turning now to Article XXII. Sec. 1 provides: "No ordinance for *public work or improvements of any kind,* or repairs thereof, shall be adopted, unless prepared and recommended by the board of public service with an estimate of the cost endorsed thereon." Sec. 2 says such ordinances shall authorize the particular *work or improvement,* specify generally the character and extent thereof and the material to be used; and that it shall be done in accordance with detailed plans and specifications finally adopted and approved by the Board of Public Service before advertisement for bids. Sec. 3 provides that before the Board of Public Service shall recommend any ordinance for *any public work or improvement* including the *"construction* or other improvement of any public highway . . . to be paid for . . . by special assessment," it (the Board of Public Service) shall lay out or shall have laid out, a proposed benefit or taxing district.

The Board of Public Service then holds a public hearing, as to which two weeks published notice must be given, to consider the *proposed* district and the boundaries thereof, and also the projected *work or improvement.* The notice includes an estimate of the cost of the *work or improvement,* which may cover several classes of (alternate) materials. At the hearing all interested parties may be heard both on the boundaries of the benefit district and "all other matters connected with the work proposed," which necessarily would include the extent and character of the improvement and the question whether it should be constructed at all. The board announces its determination within three days and during the next eighteen days the owners of the greater area of land in the district may file a written remonstrance either against the benefit district as laid out by the Board, or against the *proposed work or improvement.* [842] At the next meeting the Board may either rescind its action or proceed by transmitting the improvement ordinance and remonstrance to the Board of Aldermen. No appeal is allowed. Section 4 provides that all public work, other than emergency work or repairs, shall be let by bids after advertisement therefor, except that any *public work or improvement* to be paid for by special assessment may be done by the Board of Public Service as provided by ordinance.

The remainder of Article XXII seems immaterial to this controversy. Sec. 10 provides in detail that such improvement ordinances may cover grading, paving, curbing and guttering, and require the payment of the cost thereof by special assessment, as therein specified, And Sec. 18 authorizes the issuance of tax bills.

We now come to appellants' legal contentions. Their main premise is that logic, and all the historical evidence introduced, show the framers of the St. Louis Charter in using the terms "public improvement" in Secs. 1, 1A and 4 of Art. XXI, and in Secs. 1, 2, 3 and 4 of Art. XXII intended to refer to the same thing, namely, the *completed* improvement. Appellants say common sense compels that

conclusion because the acquisition of right of way for the widening of an existing street in a congested city with a view to converting it into an arterial highway, is only the first step in the process of improving it; that it would be a damage instead of a benefit to encroach on the frontage of abutting property, perhaps destroying part of buildings thereon, to get additional space for the widened street, unless the project were completed by *using* the space for paving, guttering, curbing, sewer and surface water outlets, and the like; that otherwise the money paid out in damages would be wasted; and the exaction of it from landowners by special benefit assessments would be wholly uncompensated. Appellants presented the testimony of three qualified experts, including one who had served on the Board of Public Service and its predecessor body for 20 years, all of whom agreed there could be no special benefits from the mere acquisition of the land. Some of them further testified there had been no estimate of the cost of the completed improvement when the benefit assessments in condemnation proceeding were made by the commissioners.

Further appellants point out that this court has *held* the special benefits flow from the completed improvement, as in City of St. Louis v. Senter Comm. Co., 336 Mo. 1209, 1221-2, 84 S. W. (2d) 133, 138(1, 2) where it was said: ''Assessing benefits is the determination of the proportion to be paid by property owners of the cost of making a public improvement (of which cost, damages is one item) . . . Benefits are based on estimates of the effect of improvements, at the time of completion, to increase the value of the property (usually over what it was when the proceedings were begun) and not upon the immediate effect of the mere proposal to make them.'' On that point we agree with appellants that the special benefits which may be considered are those arising from the improvement and the use for which the land is to be condemned. 20 C. J., sec. 258, p. 821, 29 C. J. S., secs. 182, 183, p. 1063; 18 Am. Jur., sec. 297, p. 942; and many Missouri cases cited in 11 West's Mo. Digest, ''Eminent Domain,'' secs. 145, 146, pp. 446-451.

Next appellants argue that since the condemnation proceeding contemplates the completion of the whole project; and since the construction of the paving is an integral part thereof; therefore the *procedural* requirements of *both* Articles XXI and XXII must be followed before the project can be brought to the point even of potential consummation so that special benefits may be assessed. In a reply brief appellants explain this does not mean that all steps *must* be taken in *one* proceeding; but only that the construction project under Article XXII must have been prosecuted either with the other, or separately and contemporaneously, to such a stage that the nature, extent and cost thereof, and the attitude of property owners, may be known. That, we interpolate, does not harmonize with several of appellants' contentions still urged on this appeal; but we go on.

The foregoing is appellants' major thesis in attacking the *jurisdictional* validity of the final judgment in the original condemnation suit. They concede that the condemnation proceeding followed Article XXI of the Charter governing such proceedings (except in respects to be discussed later.) But they assert it is void because it failed to comply also with the requirements of Article XXII covering construction work—all this on the theory that the condemnation and the construction were parts of a single project. Two specific objections are urged. The first is that the condemnation ordinance, No. 32615, was not *prepared,* as well as recommended, by the Board of [843] Public Service, and did not have endorsed on it an *estimate of the cost* of the contemplated construction work, also prepared by the same Board, all as required by Sec. 1, Art. XXII. These requirements, appellants contend, are jurisdictional "checks" or restraints on the power of the legislative branch of the city government (the Board of Aldermen) and the courts, imposed by the city charter and exercised through the Board of Public Service as an instrument, like the checks imposed on our General Assembly by the State Constitution.

Second, and on the same theory, appellants contend the condemnation proceeding was void because the only benefit district laid out was the one *fixed* by the condemnation *commissioners* after a hearing on *ten* days published notice, as required by Sec. 5 of Art. XXI of the charter governing condemnations; whereas Sec. 3 of Art. XXII governing construction work, requires a *proposed* benefit district to be laid out by the *Board of Public Service,* and a hearing to be held by that Board after *two weeks* published notice, at which the property owners may oppose both the extent of the district and the kind of construction work, or whether it shall be done at all; and after which they may remonstrate if the Board's decision does not coincide with their views. Appellants say this is another check on both the legislative branch and the courts by the people, in this instance the interested landowners. And they insist that requirement should have been followed in this case before special benefits could be assessed either for the condemnation or the construction.

We think appellants have misconstrued the charter. A violent distortion of its language is required to make it mean that the procedural requirements of Article XXII must be followed in condemnation proceedings under Article XXI. It is true that the same expression "public work and improvement" appears frequently in both Articles; but in our opinion it refers in each Article to the kind of improvement contemplated by that Article. Thus, in Article XXI the expression is several times limited either expressly or by implication to improvements where property is taken or damaged; whereas Sec. 1 of Article XXII speaks of "public work or improvements of any kind, or *repairs* thereof." Sec. 2 says the ordinance authorizing the

particular work or improvement shall specify "the *material* to be used therein." Under Sec. 3, the kind of construction and the materials to be used are questions submitted to the landowners at the hearing before the Board of Public Service. And Sections 2 and 4 provide that generally contracts for the construction of the public work shall be let on bids after advertisement. All this is entirely out of harmony with the idea that the public improvement spoken of in Article XXII applies to the condemnation of land. No repairs, materials or advertisement for bids would or could be involved in such a proceeding; and the very differences in estimates, benefit districts, hearings and other proceedings under the two Articles, which appellants have stressed, show that they are separate and have different objectives.

Considering next the suggestion in appellants' reply brief that the requirements of the charter would have been satisfied if the procedures under the two Articles had been prosecuted separately but contemporaneously, so the landowners and condemnation commissioners would know about the character and cost of the paving improvement before the special benefits were assessed. The evidence bearing on this point is very murky. It discloses there had been no estimate of the cost of the paving improvement when the commissioners made their benefit assessments. And one witness further testified the commissioners were furnished with maps of the widening project but received no advice as to how to proceed, and believed they were concerned with the condemnation alone. That also was the position taken by the respondent city at the trial and is on this appeal.

But whether or not full record information about the paving improvement and cost was available to the landowners when the circuit court later *reviewed* the benefit assessments in condemnation, the record does not show. And this review proceeding, as has been held, was essentially a trial de novo. The circuit court "was not concerned as to whether the commissioners followed erroneous methods, or took into consideration improper elements, in making the assessment which they made." City of St. Louis v. Calvary Central Ass'n, 329 Mo. 1172, 1174, 48 S. W. (2d) 938(2) ; City of St. Louis v. Schopp, 325 Mo. 480, 486, 30 S. W. (2d) 733, 735(7). The holding in this Schopp case was questioned in Wabash Ry. Co. v. City of St. Louis, 64 Fed. (2d) 921, 924(3) on the point [844] whether the report of the condemnation commissioners has substantial evidentiary weight in the subsequent review by the circuit court; and on that point the view of the Federal court has been sustained by our later cases growing out of this same Morgan street project.[1] But if it appears that the commissioners arrived at their conclusions as to the amount of benefits on a wrong legal theory, it is obvious the circuit court may for that reason

---

[1] City of St. Louis v. Franklin Bank, 341 Mo. 913, 110 S. W. (2d) 734; Id. (Mo. Div. 1), 107 S. W. (2d) 3; Id., 340 Mo. 383, 100 S. W. (2d) 924.

disregard them, City of St. Louis v. Rossi, 333 Mo. 1092, 1107(10), 64 S. W. (2d) 600, 607 (14, 15); and that the landowners have full opportunity in the review proceeding to correct such errors.

Appellants allege in one of their two motions here that they did not file exceptions and participate in the review, on the advice of counsel based on the theory that they had not been served with notice of said proceedings or made parties thereto; also for the reason that they then had pending an injunction suit attacking said assessments, which was later decided adversely to them because the action was prematurely brought. Eighth & Morgan Garage & Filling Station v. City of St. Louis, 342 Mo. 874, 119 S. W. (2d) 202. Incidentally, it is to be noted that this decision held no enforceable special benefits *existed* until final judgment in condemnation was rendered on September 17, 1934.

And we do know the commissioners' report of the assessments was made on December 22, 1930; that supplemental reports were filed in February and September, 1932; and that the final judgment was not rendered until two years later, as just stated. It further appears from the record in Central Paving & Const. Co. v. Eighth & Morgan Garage & Filling Station (Mo. Div. 2), 159 S. W. (2d) 660 that five ordinances for paving construction work on Morgan Street were passed by the Board of Aldermen on dates not shown, but early enough for the work covered by one of them to be completed and a taxbill issued on January 10, 1934, nine months before the final condemnation judgment was rendered.

But aside from the foregoing, there are two other overshadowing questions: (1) whether the law *required* an estimate of the cost of the paving improvement, and the plans and specifications therefor, to be made and filed in the *construction* proceeding as a prerequisite to the assessment of benefits in the *condemnation* proceeding; (2) and if the law did so require and they were not filed, was it an irregularity affecting the right and power of the circuit court to render the final judgment in the latter proceeding, such as may now be utilized by appellants in challenging that judgment by motion in the nature of a writ of coram nobis.

On the first question, we have already held, there is nothing in either Article XXI or Article XXII of the St. Louis charter making such a requirement. As regards the general law, most condemnations are conducted under the eminent domain act, Article 2, Chapter 8, R. S. 1939, id., Mo., R. S. A., which is applicable to railroads and public utilities, and also to drainage districts and the State Highway Department. In drainage districts the construction costs are paid by the landowners through special benefit assessments. But more often that outlay is borne by the condemnor, as in the case of the Highway Department and private corporations. Under the St. Louis charter part of the cost may be charged to the city.

In all such condemnation proceedings special benefits may be assessed; and there must, of course, be advance plans of some kind to enable the condemnor to determine what land shall be appropriated. Further, the petitioner in the proceeding must show the public use for which the land is to be taken, describe it, and set forth "the general directions" of the road. Sec. 1504, R. S. 1939, Mo., R. S. A., sec. 1504. But we know of no statutory or legal requirement that the plans, specifications and estimates showing the nature and cost of the construction improvement must be filed in advance before special benefits can be assessed. Certainly that is not true of condemnations by private corporations; and the principle should be the same there as here. For the argument is that such data is requisite to the court's determination of the condemnation benefits, as showing: the nature and cost of the contemplated improvement; whether it will be constructed; and what influence it will have on the market value of the land claimed to be benefited. In our opinion this is a matter of *evidence* not of jurisdictional procedure.

In Kansas City v. Baird, 98 Mo. 215, 219, 11 S. W. 243, 244(3), a street widening **[845]** condemnation proceeding, this court said:

"Further complaint is made because the court refused to instruct the jury that if the street, when opened, would be impassable for travel and use, then the jury should assess no benefits to adjoining land. The evidence does show that the street passes over a rough and broken country, and that if no work is done upon it, when opened, it will be useless, but *we are at a loss to see what that has to do with the validity of this condemnation. There is no evidence that the street cannot be made passable, and the very object of this proceeding is, that the city may acquire the property, and then bring the street to a reasonable grade.*"

So, also, in State ex inf. Killam v. Colbert, 273 Mo. 198, 215, 201 S. W. 52, 57, a case cited by appellants, this court held the county court had power to determine at the time of the formation of a special road district that the land included therein *would* be benefited thereby. In so deciding the opinion said:

"*Of course, the mere laying out of the district, without more, would not benefit anybody's lands.* It is not likely that the county court would ever find the 'public good' required such purposeless action. In the very nature of a case, when a district is formed it is formed for the purpose of constructing some contemplated road or roads, and in such case the county court *probably has information as to the location and extent of the road or roads in contemplation when the petition is presented,* otherwise how could it determine that the public good required the formation of the district?"

Our second italics in this quotation show the Baird case recognized the principle that the county court could rely on unrecorded *information* it had concerning the nature of the contemplated improvement.

In fact the opinion *presumed* the court had that information, or treated it as a necessary inference; thereby showing it regarded the facts as mere evidence not involving any jurisdictional procedure. Appellants stress the part of the quotation first italicized, and distinguish this Baird case on the ground that the county court there was only making a preliminary determination of *abstract* special benefits, without fixing the monetary amount thereof.

They assert an entirely different question is presented when the *amounts* of special benefits are assessd against particular tracts in a benefit district, based on the estimated effect of the contemplated improvement. On that point they refer again to the Senter case, supra, 336 Mo. l. c. 1222(2), 84 S. W. (2d) l. c. 138(2), which says such benefits cannot be based "upon the immediate effect of the *mere proposal* to make them." The Senter case, in turn, cites 44 C. J., sec. 2987, p. 586, which states that special benefit assessments "cannot be legally predicated upon future action of the public authorities or future legislation; and hence, where property cannot be benefited by a proposed improvement unless subsequent work is done for which no provision is made, the property cannot be specially assessed."

Ten Illinois cases, one from Washington and one from New Jersey are cited to this text from Corpus Juris. We list some of these decisions in the margin.[2] The Illinois cases support the text, several of them saying in substance that no special benefits can be assessed in a condemnation proceeding in anticipation of the construction of a municipal improvement unless the record shows provision therefor has already been made by a valid ordinance. But all these cases were appeals and it appears that in all of them the objection had been made below in the condemnation proceeding. And the Clear Creek case further shows these cases are not reasoned on the theory that such prior municipal legislation is procedurally or jurisdictionally necessary, but only on the theory that otherwise the *evidence* would be too speculative or conjectural. The Marginal case from Washington does not go as far as the Illinois cases, saying only that the hypothetical public improvement there, on faith of which the benefit assessment was partly based, was not even "planned, contemplated or projected at the present time . . . ; nor is there any assumption or assurance thereof in the reasonably near future." This case also was ruled on the [846] theory that the benefits were speculative, as was the New Jersey case. It would seem the Illinois cases are not in

---

[2]Harmon v. Village of Arthur, 309 Ill. 95, 100, 140 N. E. 53; Clear Creek Drain. Dist. v. St. L., I. M. & S. Ry., 264 Ill. 640, 643-5, 106 N. E. 490; City of Chicago v. Kemp, 240 Ill. 56, 58, 88 N. E. 284; City of Waukegan v. Burnett, 234 Ill. 460, 461, 84 N. E. 1061; Title Guarantee & Trust Co. v. Chicago, 162 Ill. 505, 508, 44 N. E. 832; Washington Ice Co. v. Chicago, 147 Ill. 327, 331, 35 N. E. 378, 37 Am. St. Rep. 222; In re West Marginal Way, 112 Wash. 418, 421-2, 192 Pac. 961; State, Kellogg, Pros., v. Elizabeth, 40 N. J. Law, 274, 276-7.

harmony, at least in principle, with some of the decisions in this state.[3]

■ Returning to the second question stated in the seventh preceding paragraph—that is whether the failure to file an estimate of the cost of the paving improvement and of the plans and specifications therefor, even if legally required, was an irregularity such as can be raised by appellants' motions in the nature of writs of coram nobis. We think not, since we have reached the conclusion stated above, that the facts about the nature, cost and certainty of the construction improvement are merely evidentiary and not procedural in any jurisdictional sense. A writ of coram nobis is not available for the correction of errors of law arising on the face of the record. And if we were to grant arguendo that the filing of an estimate of the cost of the paving improvement and the plans and specifications therefor was legally essential, as appellants contend, the omission to file them would be a fact patent on the record, which could not be raised by coram nobis.

The writ lies only for errors of *fact*; and not by any means *every* fact that would make the judgment erroneous. If that were true there would be no need for appeals and writs of error and for statutes setting a time limit on them. The facts must be such as affect the *power and right* of the court to render the particular judgment—facts which, if known, would have *prevented* its rendition. In a sense they must be directed against what would have been either a want or abuse of jurisdiction—at least, nor mere error—if the facts had been known to the court. Familiar examples are when the judgment was rendered against a decedent, an infant or insane person. And the further rule is that if the facts were known to the complaining party at or before the trial, or might have been discovered by the exercise of reasonable diligence, the writ cannot be invoked. Certainly that barrier restrains appellants here, regarding matters which either were or were not of record in the office of the Board of Public Service in St. Louis. Present counsel were not in the case at that time. Citations on the legal propositions stated in this and the last paragraph are abundant.[4]

■ Appellants' second motion—to recall or modify the judgment below—attempts to raise constitutional questions. Paragraph 5 says the benefits assessed were general, not special. Paragraph 8 alleges they were assessed on a front foot basis without considering the *area* of the tracts. Paragraph 9 asserts they were not equal and uniform, but discriminatory and arbitrary, thereby depriving them of

[3]McGhee v. Walsh, 249 Mo. 266, 285-287, 155 S. W. 445, 450(4); Platte City Special Road Dist. v. Couch, 320 Mo. 489, 497(4), 8 S. W. (2d) 1003, 1007(5).

[4]34 C. J., secs. 602, 605-615, pp. 392-398; Ex parte Dusenberg, 325 Mo. 881, 885, 30 S. W. (2d) 94, 95(2); Simms v. Thompson, 291 Mo. 493, 515, 236 S. W. 876, 883; Jeude v. Simms, 258 Mo. 26, 40, 166 S. W. 1048, 1052(4); State v. Stanley, 225 Mo. 525, 531, 125 S. W. 475, 476(1); Townsend v. Boatmen's Nat'l Bank (Mo. App.), 148 S. W. (2d) 85, 87(5).

due process. In each instance the assignment alleges the facts were not known to the trial court, and ends with the pleaded conclusion "in violation of the" State and/or Federal Constitutions. There are several reasons why these questions cannot be considered. First, a constitutional question cannot be raised any more than any other, by a writ of coram nobis, unless it be the kind of question stated in the last paragraph. Second, it affirmatively appears these questions were not raised in the trial court (that is, they were not *timely* raised, for the motion says the trial court did not know about them). Fourth, appellants' main brief does not appeal to the Constitution either in its Assignments of Error or Points and Authorities. In the Argument, the brief makes general references to the Constitution in support of contentions, but cites no section or article. The first specific reference to any section thereof is in appellants' Reply Brief; and that one only argues that if a certain provision of the charter had the meaning the respondent city attributes to it, it would be out of harmony with the specified section. We need not cite authority on the insufficiency of these assignments.

So far we have been discussing appellants' contentions that the provisions of Articles XXI and XXII of the St. Louis charter are interdependent and must be followed together or contemporaneously in condemnation proceedings for street improvements. Going no further than necessary, we rule these contentions against [847] appellants in view of the manner in which they are raised—by a motion in the nature of a writ of coram nobis.

■ Appellants made two further assignments which are based on Article XXI of the charter alone. The first is tendered by their first motion—to set aside and vacate the condemnation judgment—and invokes Sec. 10 of that Article. The section, as will be remembered, provides that if the City shall dismiss any condemnation proceeding for any reason other than defect in procedure, it shall not begin a *like* action within ten years thereafter unless upon the petition of the owners of three-fifths of the property to be taken, or unless the city shall pay the damages assessed therein. The city did begin the condemnation proceeding under Ordinance No. 32615, involved here, within ten years after having dismissed for reasons other than defects in procedure, four prior condemnation proceedings respectively under four several street widening ordinances covering parts of Morgan Street, and in said Ordinance 32615 repealed those ordinances.

Appellants charge in their motion that the condemnation proceeding based on the new Ordinance 32615 was "like and similar" to the four actions dismissed. In their brief they assert the circuit court was "bound to take judicial notice" of that fact before entering the condemnation judgment. But appellants have not explained wherein the old ordinances and the new were alike, although they put them in evidence; and say under the Major Street Plan they were always

considered one project. We, ourselves, observe their general purport was to widen Morgan Street from 60 to 80 feet throughout their coverage. On the other hand, the city's brief states that of these four ordinances one covered 2 blocks; another 10 blocks; the third 10 blocks; and the fourth provided for a triangular cut-off immediately west of Grand Avenue to Delmar Boulevard, making 22 blocks in all. The superseding Ordinance 32615 covers 26 blocks and provides for an elaborate double cut-off at the western terminus reaching 1168 feet further west than before, taking 2.325 additional acres and leading to both Delmar Boulevard and Enright Avenue. Furthermore, it added 9200 square feet on the *north* side of that part of Morgan Street covered by one of the old ordinances, when the added width was to have been on the *south* side before. The city's brief also states there are differences in the other two ordinances. We are not prepared to say the consolidation of all these projects into one, with added length and added width on a different side of the street in some places, and with an expansive western terminus, was not a substantial change.

Appellants' motion further alleges no ''legal'' petition for the new Ordinance 32615 was signed by three-fifths of the property owners, as was necessary under Sec. 10, Art. XXI if the new ordinance was ''like'' the old ones. But in their brief here appellants have abandoned that contention, and charge only that there was *no allegation in the condemnation petition* that the property owners had signed such a petition. That is true. There was none, though the judgment finds such a petition was signed. Appellants say that is not enough; that the allegation in the condemnation petition was jurisdictional. We need not go into that. It is not an assignment of error based on new facts, but a pure question of law based on patent record facts, which cannot be raised by a motion in the nature of a writ of coram nobis. So we overrule the assignment of error.

The final group of assignments are as follows: that the levy of special benefits was under the taxing power; that the circuit court in reviewing the report of commissioners and finally fixing the assessments, acted in a legislative capacity; that the City of St. Louis is without power to *order* the circuit court, acting in its judicial capacity, to give the findings of the condemnation commissioners the force and effect of a judgment; that the provisions of Secs. 4, 5, 7 and 8 of Article XXI, specifying the duties of the commissioners, and providing for the review proceeding in the circuit court, and final judgment after approval of the assessments, constitute an invalid delegation of legislative power because they fix no standard, measure or policy by which the delegatee can ascertain or determine the amount of the special benefits; that the benefits assessed were general, not local or special.

None of these assignments, except possibly the last one, are in anywise dependent on new facts presented in the hearing on the motion. They do not tender issues that can be raised by a motion in the nature of a writ of coram nobis; but simply interpose questions of charter construction or suggest constitutional questions. Nevertheless we comment on them very briefly. It [848] seems to us practically all of these contentions were answered in Schwab v. City of St. Louis, 310 Mo. 116, 274 S. W. 1058. Even the opinion in City of St. Louis v. Brinckwirth, 204 Mo. 280, 297, 102 S. W. 1091, 1096, which appellants stress and quote extensively, decided the circuit court could render final judgment approving benefit assessments under the old St. Louis charter, as to the *amount* of the assessments, though it held no execution could issue thereon.

On the contention that the named sections of Article XXI are invalid because they fail to furnish any standard for the measurement of special benefits. The general eminent domain act, supra, contains no provision of that sort at all; Sec. 1506, R. S. 1939, Mo., R. S. A., sec. 1506, provides only for the assessment of damages. Yet special benefits have been deducted from damages under it for years. The act merely involves estimating the effect of the improvement on the market value of the land; and the power is not so broad as to require definition. On the point that the benefits assessed against appellants were general, not special or local, we need only say the fact that Morgan Street is included in the Major Street Plan does not mean there are or can be no special benefits to abutting and neighboring landowners.

We find no error in the record proper and the judgments and orders of the circuit court overruling appellants' two motions are affirmed. All concur except *Gantt, J.,* absent.