[EDITORS' NOTE: THIS OPINION HAS BEEN WITHDRAWN.]
G. Tracy Mehan, III Director Missouri Department of Natural Resources P. O. Box 176 Jefferson City, Missouri 65102
Dear Director Mehan:
This opinion letter is in response to your question asking:
 Is there any way that Missouri counties can enforce floodplain management regulations (that meet the minimum requirements of the National Flood Insurance Program regulations at 44 CFR §§ 60.3, 60.4 and/or 60.5) on lands used or to be used for agricultural purposes in light of the decision in St. Charles County, Missouri v. Dardenne Realty Company, et al., 771 S.W.2d 828 (Mo. banc 1989)?
The resolution of this issue requires an examination of state and federal law and implementing regulations pertaining to the National Flood Insurance Program ("NFIP").
The NFIP, 42 U.S.C. § 4001 et seq., was created by the National Flood Insurance Act of 1968, which was enacted as Title XIII of the Housing and Urban Development Act of 1968, P.L. 90-448. The purpose of the NFIP is to provide previously unavailable flood insurance protection to property owners in flood-prone areas. Mudslide protection was added by the Housing and Urban Development Act of 1969, P.L. 91-152, and flood-related erosion protection was added by the Flood Disaster Protection Act of 1973, P.L. 93-234.
One purpose of The Flood Disaster Protection Act of 1973,supra, was to
 require States or local communities, as a condition of future Federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances with effective enforcement provisions consistent with Federal standards to reduce or avoid future flood losses. . . . 42 U.S.C. § 4002(b) (3).
To qualify for the sale of federally-subsidized flood insurance, a community must adopt and submit to the Federal Emergency Management Agency ("FEMA"), as part of its application, flood plain management regulations satisfying at a minimum the criteria set forth at 44 CFR Part 60 which are designed to reduce or avoid future flood, mudslide, or flood-related erosion damages. See, 44 CFR § 59.2(b). Such regulations must be legally enforceable, applied uniformly throughout the community to all privately and publicly owned land within flood-prone, mudslide and flood-related erosion areas, and the community must provide that the regulations take precedence over any less restrictive conflicting local laws, ordinances or codes. See, 44 CFR § 60.1(b). Minimum requirements for adequate flood plain management regulations are set forth at 44 CFR § 60.3 for flood-prone areas, at44 CFR § 60.4 for mudslide areas, and at 44 CFR § 60.5 for flood-related erosion areas.
The minimum requirements for a community's flood plain management regulations increase as the amount of technical information supplied by FEMA to the community increases. For example, in a flood-prone area where FEMA has not defined a special flood hazard area, has not provided water surface elevation data, and has not provided sufficient information to identify the floodway, the community, at a minimum, shall: require permits for all proposed construction or development; review proposed development to ensure that all requisite permits have been obtained; review all permit applications, subdivision proposals, and other proposed development to determine whether proposed building sites will be reasonable safe from flooding; and require water supply and sanitary sewer systems be designed to minimize infiltration from flood waters. 44 CFR § 60.3(a).
However, in a flood-prone area, if FEMA has designated special flood hazard areas, but has not produced water elevation data nor identified a floodway, the community, at a minimum, shall: meet the requirements set forth in 44 CFR § 60.3(a); require permits for all proposed construction and other development within the designated special flood hazard areas; require subdivision proposals and other proposed development provide base flood elevation data; review all reasonably available base flood elevation data; obtain the elevation in relation to mean sea level of the lowest floor of most all structures; obtain to what height buildings have been floodproofed; notify the state of any changes in watercourses; assure that the flood carrying capacity within any altered watercourse is maintained; and require manufactured homes be installed such as to minimize flood damage. 44 CFR § 60.3(b).
In Missouri, the authority of counties to prescribe flood plain management regulations exists in two statutory sources. Chapter 64, RSMo (1986) generally provides for county planning and zoning, and §§ 49.600 to 49.615, RSMo (1986) specifically address the NFIP.
Concerning first class charter counties, § 64.090.1, RSMo (1986) provides, in part,
 For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties, . . . the county commission . . . is hereby empowered to restrict, by order, in the unincorporated portions of the county, the height, number of stories and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, including areas for agriculture, forestry and recreation.
Concerning first class noncharter counties, § 64.255.1, RSMo (1986), provides, in part,
 For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties, . . . the county commission in all counties of the first class not having a charter form of government and not operating a planning and zoning program under the provisions of sections 64.800 to 64.905, is hereby empowered to regulate and restrict, by order, in the unincorporated portions of the county, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence, parks or other purposes, including areas for agriculture, forestry and recreation.
Concerning second and third class counties, § 64.620, RSMo (1986) provides, in part,
 For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties of the second or third class . . . the county commission . . . shall have power after approval by vote of the people . . . to regulate and restrict, by order of record, in said unincorporated portions of the county, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, including areas for agriculture, forestry and recreation. . .
Concerning fourth class counties, § 64.850, RSMo (1986) provides, in part,
 For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties of the . . . fourth class . . . , the county commission . . . may, after approval by vote of the people as provided in section 64.845, regulate and restrict, by order of record, in the unincorporated portions of the county, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and other land for trade, industry, residence or other purposes.
With respect to land used for agricultural purposes, several statutory provisions, so-called "agricultural exemptions," contained in chapter 64, affect lands used for agricultural purposes with regard to first class charter, second, third and fourth class counties. There is no agricultural exemption affecting land used for agricultural purposes in a first class noncharter county.
Regarding first class charter counties, § 64.090.2, RSMo (1986) provides:
 The provisions of §§ 64.010 to 64.160
shall not be exercised or regulations imposed relating to the raising of crops on land used or to be used for agricultural purposes, orchards or forestry, or to require permits with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures to be used as such.
Regarding second and third class counties, § 64.620, RSMo (1986) provides, in part,
 . . . The provisions of §§ 64.510 to 64.690
shall not be exercised so as to impose regulations or to require permits with respect to land, used or to be used for the raising of crops, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures. . . .
Regarding fourth class counties, § 64.890.2, RSMo (1986) provides, in part,
 The provisions of §§ 64.800 to 64.905
shall not be exercised so as to impose regulations or to require permits with respect to land used or to be used for the raising of crops, pasture, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures. . . .
The Missouri Supreme Court addressed the agricultural exemption in § 64.620 in St. Charles County, Missouri v.Dardenne Realty Co. et al., supra. In that case, a second class county enacted a flood plain order pursuant to chapter 64, which provided that no person, firm or corporation may initiate any development or substantial improvement without first obtaining a permit from the county. Four landowners challenged the county's attempt to require permits for their levee construction. The landowners asserted that the agricultural exemption in § 64.620 served to exempt their agricultural land from regulation under chapter 64. The Missouri Supreme Court, in affirming the trial court's entry of summary judgment, held that § 64.620 exempted from the permit requirement land used for the raising of crops.
As a result of the foregoing statutory agricultural exemptions, counties enacting flood plain ordinances under the provisions in chapter 64 may not be able to fully regulate flood plain development in accordance with the FEMA requirements set out in 44 CFR Part 60. With regard to first class charter counties, § 64.090.2 precludes a county from imposing regulations that require the obtaining a permit prior to the erection, maintenance, repair or alteration of farm buildings or farm structures. However, such a county is able to regulate, for flood plain management purposes, other activities on agricultural lands since the exemption only applies with respect to "regulations imposed relating to the raising of crops on land used or to be used for agricultural purposes (emphasis added)." In contrast, §§ 64.620 and 64.890.2, affecting second, third and fourth class counties, preclude the imposition of regulations or permit requirements with respect to land used for agricultural purposes or with regard to farm buildings and farm structures.
Concerning the implementation of the NFIP, § 49.600.1, RSMo (1986) states:
 The county commission, in all counties which border the Mississippi River or the Missouri River and which have not adopted county planning and zoning, may, as provided by law, adopt or rescind by order or ordinance regulations to require compliance with Federal Emergency Management Agency standards, necessary to comply with the national flood insurance program, in any flood hazard area designated by the Federal Emergency Management Agency, and the county commission in any other county which has not adopted county planning and zoning, may, as provided by law, adopt or rescind by order or ordinance regulations to require compliance with Federal Emergency Management Agency standards necessary to comply with the national flood insurance program, in any flood hazard area designated by the Federal Emergency Management Agency; provided, however, that no ordinance or order enacted pursuant to this section in any county other than those counties which border the Mississippi River or the Missouri River shall be effective unless the governing body of the county submits to the voters of a county, at a county or state general, primary or special election, a proposal to authorize the governing body of the county to adopt such an order or ordinance.
There is an exemption found in § 49.600.3, RSMo (1986) which states:
 The provisions of this section shall not apply to the incorporated portions of the counties, or to land used or to be used for the raising of livestock, crops, orchards or forestry, nor shall this section apply to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures used for such purposes on these lands and shall not apply to underground mining where entrance is through an existing shaft or shafts or through a shaft or shafts not within the area shown on the flood hazard map, which will not increase flood heights.
The issue to be resolved concerns whether the exemption in § 49.600.3 relating to agricultural lands, farm buildings and farm structures, and underground mining shafts serves to preclude a county's authority to regulate such uses for flood plain management purposes.
The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in their plain and ordinary meaning. Wolff Shoe Co. v. Directorof Revenue, 762 S.W.2d 29 (Mo. banc 1988). The title of a legislative act may be given weight in ascertaining legislative intent and true scope of statute. Atwell v. Jack Henry andAssociates, Inc., 748 S.W.2d 929 (Mo.App. 1988). In construing a statute to determine legislative intent, it is presumed that the legislature was aware of the state of law at the time of its enactment. Nicolai v. City of St. Louis,762 S.W.2d 423 (Mo. banc 1988). The General Assembly is presumed to be aware of existing declarations of law and construction of statutes when it enacts a law on the same subject. State v.Coor, 740 S.W.2d 350 (Mo.App. 1987). A statute is to be given a reasonable interpretation in light of the legislative objective, and the true intention of the framers must be followed; where necessary the strict letter of the act must yield to the manifest intent of the legislature. BCI Corp. v.Charlebois Construction Co., 673 S.W.2d 774 (Mo. 1984). The true intention of the legislature must be followed, and, if necessary, the strict letter of the act must yield to its obvious intendment. State ex rel. Hickman v. City ofKirksville, 690 S.W.2d 799 (Mo.App. 1985).
Sections 49.600-.615 were enacted as Senate Bill 746 during the Second Regular Session of the Eightieth General Assembly in 1980. The preamble to Senate Bill 746 stated:
 AN ACT to allow county courts in second, third, and fourth class counties to participate in the national flood insurance program, with an emergency clause.
While subsequent amendments changed the reference in § 49.600.1 from "county court" to "county commission" and deleted the references to second, third and fourth class counties [see, House Bill 34, First Regular Session, 82nd General Assembly (1983) and Senate Bill 219, First Regular Session, 82nd General Assembly (1983)], the purpose was unchanged. Accordingly, the specific purpose underlying the enactment of §§ 49.600-.615 was to enable counties to participate in the NFIP.
In enacting legislation authorizing counties to participate in the NFIP, the presumption exists that the General Assembly was aware of the federal laws and regulations implementing the NFIP. Nicolai v. City of St. Louis, supra. This presumption is supported by the General Assembly's inclusion of several of the FEMA standards concerning base flood elevation information, adequate installation requirements, and a reference to the one hundred year flood event in § 49.605, RSMo (1986), which states:
 No permit required by the provisions of order or ordinance regulations adopted pursuant to the provisions of §§ 49.600 to 49.615 shall be denied an applicant if the proposed construction, use or other development will not raise the flood elevation of the one hundred year flood level more than one foot; provided, however, that any permit may require that the lowest floor of an insurable structure shall be above the one hundred year flood level and that all structures shall be adequately anchored to prevent flotation, collapse or lateral movement of the structure.
In construing § 49.600.3, it is necessary to give effect to the language, "which will not increase flood heights." Although doing so involves an ungrammatical sentence structure, the only means to give any operative effect to this language is to interpret the phrase as modifying the statutory exemptions, agricultural lands farm buildings and structures, and underground mining shafts, present in the statute. Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all. Norberg v. Montgomery, 173 S.W.2d 837
(Mo. 1943). The meaning of a statute may be plain although it contains mistakes in writing, grammar, spelling, punctuation, misnomers, misdescriptions, surplusage or omits words. Stateex rel. Klein v. Hughes, 173 S.W.2d 877 (Mo. 1943).
Moreover, the phrase, "which will not increase flood heights," must be afforded its plain and ordinary meaning, but, at the same time, the legislative intent in enacting §§ 49.600-.615 must be followed. The plain and ordinary meaning of the term, "flood," is, "a rising and overflowing of a body of water, especially onto normally dry land." Webster's Ninth NewCollegiate Dictionary (1985). With regard to the exemptions, such phrase can only be interpreted to mean that the exemptions exist for agricultural land, farm buildings and structures, and underground mining shafts in areas not impacted by flood heights, i.e. in areas not normally susceptible to flooding. Any contrary interpretation would preclude a county from regulating such uses for purposes of compliance with the NFIP requirements, thereby defeating the expressed legislative intent.
Accordingly, under the authority of § 49.600.1, counties may enact regulations in order to comply with FEMA standards in implementing the NFIP. In addition, such regulations may concern land used for agricultural purposes, farm buildings and structures, and underground mining shafts when such are located within an area susceptible to flooding. Areas susceptible to flooding are identified in the applicable FEMA regulations in44 CFR Parts 59 and 60.
In summary, the authority of counties to adopt ordinances implementing the NFIP requirements arises from two statutory sources. Under the provisions of chapter 64, and as a result of the aforementioned agricultural exemptions, second, third and fourth class counties may not regulate, for NFIP purposes, agricultural lands or farm buildings and structures used for agricultural purposes. In this regard, St. Charles County,Missouri v. Dardenne Realty Co., supra, addressed the authority of a second class county to regulate such uses and upheld the exemption. However, by operation of the agricultural exemption, first class charter counties may regulate, for NFIP purposes, agricultural lands but may not require permits for farm buildings and structures. First class noncharter counties may fully regulate agricultural lands, farm buildings and farm structures. Under the provisions in §§ 49.600-.615, which were enacted by the General Assembly for the express purpose of allowing participation in the National Flood Insurance Program, all counties bordering the Mississippi River and the Missouri River that have not enacted county planning and zoning and any other county that has not enacted county planning and zoning may, upon approval of the voters, enact ordinances to meet FEMA standards in order to participate in the NFIP. Such counties may regulate agricultural lands, farm buildings and structures, and underground mining shafts in areas subject to flooding, but, as a result of the operation of the exemption in § 49.600.3, counties may not regulate such uses outside of areas subject to flooding. Such areas susceptible to flooding are described by FEMA in its regulations in 44 CFR Parts 59 and 60.
In conclusion, counties deriving their regulatory authority from §§ 49.600-.615, RSMo (1986), first class noncharter counties, and, in certain circumstances, first class charter counties, all have authority to enforce the requirements of the National Flood Insurance Program contained in 44 CFR Part 60 on lands used or to be used for agricultural purposes.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General